OPINION OF THE COURT
Bentley Kassal, J.
All defendants move, under CPLR 3211 (subd [a], par 5) to dismiss the complaint, on the grounds that the action is barred by the Statute of Limitations (CPLR 214-a). There are two causes of action, one for medical malpractice and the second for implied contract.
*145 FACTS
In July, 1961, plaintiff was examined by defendant, Dr. Brenner, who referred her to a surgeon, defendant Dr. Edinbergh, for an appendectomy, which Dr. Edinbergh performed in July, 1961, at the defendant Booth Memorial Hospital. During the course of the operation, the surgeon employed wire sutures which, as he claims, "I intentionally left them in as a permanent indissoluble suture material.” Dr. Edinbergh never treated or saw her after August, 1961.
She returned to see Dr. Brenner in October, 1962, and, allegedly, he examined a large lump at the surgery site, took no action but told her, "it was of no consequence in that it was probably adhesions which develop from early moving about.” In her particulars, she claims that when she saw defendant Brenner, the growth was the size of an "orange”. Neither defendant saw or treated her thereafter.
Plaintiff claims she did not discover that there was any foreign object in her until July 2, 1975, when she went to a third doctor because she "noticed an area near the operative scar developing into a boil-like inflammation * * *. It was weeping or suppurating puss and a wire protruded from her body.” Two wire sutures were surgically removed.
The present action was not commenced until May, 1976, almost 15 years after the last treatment was received from any of the defendants, but within one year of seeing the third doctor who removed the wires.
Thus, the second cause of action, expressly pleaded in terms of breach of contract, is clearly barred by CPLR 213. Further, it has been held that where the services rendered are clearly professional and the claim is that the physician misdiagnosed or maladministered treatment the remedy is in an action for negligence and not a contract action. (Sears, Roebuck & Co. v Enco Assoc., 54 AD2d 13.) (To the degree that the second cause of action may assert any recognizable claim under another theory, such claim would be covered by the first cause of action.)
The limited facts presented above pose several issues with respect to the defense that the malpractice claims are barred by the Statutes of Limitation:
(1) The initial question which must be resolved is which of the following Statutes of Limitation applies, (a) During 1961 and 1962, when the acts alleged herein occurred, section 50 *146 (subd 1) of the Civil Practice Act provided that an action to recover damages for malpractice must be commenced within two years, (b) Effective September 1, 1963, CPLR 214 (subd 6) was adopted to provide that an action to recover damages for malpractice must be commenced within three years, (c) Finally, effective July 1, 1975, CPLR 214-a was adopted which provides: “An action for medical malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. * * * For the purpose of this section the term 'foreign object’ shall not include a chemical compound, fixation device or prosthetic aid or device.”
(2) The second question is whether any "foreign object” rule, providing that the statute begins to run only upon the date of discovery, applies to the facts of this case and, if so, what that date is.
(3) Finally, with regard to the defendant Brenner, who did not participate in the operation or insertion of the wire sutures, the additional question presented is whether he should be estopped from asserting the defense that the claim is time barred by reason of his alleged acts and statements to plaintiff.
ISSUE I — WHICH STATUTE OF LIMITATIONS
In enacting CPLR 214-a, the Legislature expressly provided that the new section would "be applicable to any act, omission or failure occurring on or after [July 1, 1975]”. (L 1975, ch 109, § 37.) Thus, neither the period of limitations nor the statutory “foreign object” rule provided in CPLR 214-a would apply to acts of malpractice committed prior to July 1, 1975, even if first discovered after that date. (1 Weinstein-Korn-Miller, NY Civ Prac, pars 214-a.02 — 214-a.04; Farrell, Civil Practice, 1976 Survey of New York Law, 28 Syracuse L Rev 379, 390-391 [hereafter "Farrell”]; Weber v Scheer, 58 AD2d 520.)
Accordingly, either the three-year Statute of Limitations *147 provided by CPLR 214 (subd 6) or the two-year Statute of Limitations under section 50 (subd 1) of the Civil Practice Act would govern the cause of action herein. In enacting the CPLR and the new Statute of Limitations under CPLR 214 (subd 6), the Legislature expressly adopted the transitional rules which appear in CPLR 218. In essence, these rules provide that an action barred on September 1, 1963, by the two-year Statute of Limitations in section 50 (subd 1) of the Civil Practice Act would not be revived, but that an action which was not barred on that date would be governed by the three-year Statute of Limitations in CPLR 214 (subd 6).
Applying these statutory rules and ignoring, for the moment, any foreign object date of discovery rule, it would appear that the following periods of limitation would control:
As to Dr. Edinbergh and Booth Memorial Hospital, the two-year limit provided in section 50 (subd 1) of the Civil Practice Act would apply since their last treatment of plaintiff occurred no later than August, 1961 (September 1, 1961 being the cut-off date under section 50 [subd 1] of the Civil Practice Act).
As to Dr. Brenner, the three-year limit provided in CPLR 214 (subd 6) would apply since he last treated plaintiff in October, 1962, and the cause of action against him was still timely on the effective date of CPLR 214 (subd 6) and 218.
Thus, absent some rule tolling the Statute of Limitations or estopping a party from asserting this defense, it is clear that all claims would now be barred.
ISSUE II — FOREIGN OBJECT RULE
Having decided that the new statutory provision in CPLR 214-a, embodying the foreign object discovery rule, does not apply to the claim herein, the next step is to determine whether any other statutory or common-law rule provides similar relief. Prior to the enactment of CPLR 214-a, the Legislature had considered, but not adopted, such a rule. (See Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427, 432-435, 438-441.) Nor did the common law of this State provide such a rule until the decision of the Court of Appeals in the 1969 landmark case of Flanagan v Mount Eden Gen. Hosp. (supra, p 430). In the Flanagan case, the court modified the prior rule that in a medical malpractice case, the Statute of Limitations begins to run from the commission of the acts (see Conklin v Draper, 229 App Div 227, affd 254 NY 620) and held that *148 "where a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice.” (Flanagan, supra, p 431.)
While Flanagan (supra) was strictly a "foreign object” case, the limited definitions of this term in CPLR 214-a do not necessarily govern. In Matter of Smalls v New York City Health & Hosps. Corp. (55 AD2d 537, 538) the Appellate Division, First Department, applied the Flanagan rule where no foreign object was left in the patient but where the alleged malpractice consisted of a negligently performed myelogram which resulted in 'internal somatic effects not readily ascertainable” (emphasis in original). Similarly, the same court applied the Flanagan rule to a negligently performed tubal ligation which resulted in an ectopic pregnancy. (Merced v New York City Health & Hosps. Corp., 56 AD2d 553; see, also, Dobbins v Clifford, 39 AD2d 1.)* However, the most recent decision by that court, citing the legislative intent of CPLR 214-a, held that a prosthetic device should not be considered a foreign object if it was neither defective when inserted nor improperly inserted. (Weber v Scheer, 58 AD2d 520, supra.) See, also, Murphy v St. Charles Hosp. (35 AD2d 64), where the Appellate Division, Second Department, applied the Flanagan rule to a prosthesis (hip pin) which broke four years after it was surgically inserted.
Accordingly, under the rule of the Flanagan case, as further refined by the Appellate Division of this department in the Weber case (supra), the date of actual or implied discovery would be the date of the accrual of the cause of action, based upon the wires found in plaintiff’s body, provided (1) such wires were not a prosthetic or fixation device, or, (2) such *149 wires were inserted as a prosthetic or fixation device but were improperly inserted or defective when inserted.
Assuming that either of these conditions were met, a further issue of fact would then be raised as to the date when the plaintiff "could have reasonably discovered the malpractice”. (Flanagan, 24 NY2d 427, 431, supra.)
Finally, irrespective of the date when the last treatment occurred, assuming that the date of reasonable discovery— which is the date of accrual of a cause of action under the Flanagan rule — was after September 1, 1961, this action would be barred unless it had been commenced within three years of such accrual date. (Close v Upstate Med. Center, 52 AD2d 193; Farrell, supra, p 390.) The three-year Statute of Limitations would apply since CPLR 218 expressly makes CPLR 214 (subd 6) applicable to causes of action "not barred” on that date (cf. Hoff Research & Dev. Labs, v Philippine Nat. Bank, 426 F2d 1023) and the court in Flanagan (supra, p 431) expressly stated, "the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice.”
ISSUE III — CLAIM AGAINST DEFENDANT BRENNER — ESTOPPEL
While the Flanagan rule would apply to the surgeon, Dr. Edinbergh, and the Booth Memorial Hospital, it would not apply to Dr. Brenner who was only the diagnosing and treating doctor and the only basis for liability is alleged to be his negligent diagnosis and treatment. In spite of the claim that plaintiff did not discover such alleged malpractice until many years after such treatment, neither the factual circumstances of his alleged acts nor policy considerations of the Flanagan case warrant applying the date of discovery rule to this defendant. (Schiffman v Hospital for Joint Diseases, 36 AD2d 31, mot for lv to app den 29 NY2d 483.)
Accordingly, the claims against this defendant would be barred by the three-year Statute of Limitations (as discussed in Issue I above) unless, as plaintiff argues, he is estopped from raising this defense. While the argument of equitable estoppel is presented for the first time on this motion, since the relief sought by movants is extreme, the court has carefully examined the pleadings and the law to determine whether it provides any basis for denying such relief.
Initially, it must be noted that a recent decision of the *150 Appellate Division, Fourth Department, has held that the doctrine does not apply to a malpractice cause of action. (Simcuski v Saeli, 57 AD2d 711.) That decision has been criticized in a well-reasoned analysis by Dean McLaughlin as relying on a 50-year-old case and ignoring the modern case law supporting the developing doctrine of equitable estoppel. (McLaughlin, 1978-1979 Supplementary Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 214-a, pp 82-83.) In fact, an examination of the cases cited by the Appellate Division indicates that they have been expressly or impliedly overruled by the Flanagan case (supra). However, even assuming the general applicability of the doctrine of equitable estoppel to malpractice actions, it is clear that the facts of this particular case do not warrant its application here.
As to Dr. Brenner, the bill of particulars alleges only that his role was simply that of having made an improper diagnosis one year after the operation when he examined the "large lump” and "took no action * * * other than to say it was probably of no consequence”. This is expanded upon by the affidavit of plaintiffs attorney herein wherein he repeats in substance, the same statement but adds a further alleged statement by Dr. Brenner that "it was probably adhesions which develop from early moving about.” Therefore, synthesizing the claims against Dr. Brenner and assuming they were all to be proved, they amount to no more than the usual claims of malpractice in failing to properly diagnose and/or treat plaintiffs condition in 1962.
Although plaintiff claims that she relied upon Dr. Brenner’s incorrect advice, there is no claim that he affirmatively and improperly concealed her medical condition. Rather, the bill of particulars claims only that Dr. Brenner "carelessly and negligently advis[ed] plaintiff as to her medical condition subsequent to her surgery”. Thus, the key element of knowing concealment is lacking. (Cf. General Stencils v Chiappa, 18 NY2d 125.)
DECISION
As discussed above, it is clear that the second cause of action, as against all defendants, is barred by the Statute of Limitations and that the first cause of action is also barred with respect to the defendant, Dr. Brenner. To that extent, the motion to dismiss is granted.
*151 The first cause of action against Dr. Edinbergh and Booth Memorial Hospital presents a far more difficult problem. The issues discussed in Issue II above clearly preclude a decision on the law at this time. Obviously, further exploration is required to provide a fair and proper factual determination. Under these circumstances accelerated judgment is clearly inappropriate. Further, there may be a right to a Jury trial on these issues, especially as to the claims of negligent insertion of defective sutures and the question of when plaintiff discovered or should have discovered the "foreign object”. Since these questions also go to the heart of the claims asserted in the first cause of action, no purpose would be served by directing an immediate preliminary trial on these issues. Obviously, this would require almost a full plenary trial before the actual trial.
Accordingly, the motion to dismiss by the defendant Dr. Brenner is, in all respects, granted and the motions to dismiss by the defendants Dr. Edinbergh and Booth Memorial Hospital are granted as to the second cause of action and denied as to the first cause of action without prejudice to renewal upon the trial of this action.

 Shortly before the submission of this motion, the Court of Appeals rendered its decision in Beary v City of Rye (44 NY2d 398), which considered and reversed the decisions of the Appellate Divisions in Smalls v New York City Health & Hosps. Corp. (supra) and Merced v New York City Health & Hosps. Corp. (supra). This court, and apparently, all counsel involved in this case were unaware of that decision. In Beary v City of Rye (supra), the Court of Appeals did not refer to the express legislative limitation on the application of the statutory foreign object rule to acts, omissions or failures occurring on or after July 1, 1975 (L 1975, ch 109, § 37), but found that the enactment of CPLR 214-a "clearly interdicted the extension of the 'foreign object’ exception” and "the Legislature left us no room but to conclude that it intended that Flanagan not be broadened beyond its existing confines” (pp 414-415). Since the decision herein applies the Flanagan rule, without any "broadening”, the Beary decision does not require a different result.