■ ELIZABETH COOPER, Respondent, v ALFRED EDINBERGH, Appellant, et al., Defendants.—Order, Supreme Court, New York County, entered January 15, 1979, reversed, to the extent appealed from, on the law, and defendant-appellant's motion to dismiss, as time barred, the first cause of action stated in the complaint granted and the complaint dismissed, without costs. The first cause states a claim of medical malpractice based upon an appendectomy performed on plaintiff by defendant-appellant surgeon in July, 1961. As appears by the hospital record dictated by defendant operating surgeon within days of the surgery, the "wound was closed using a few interrupted #0 surgaloy buried figure-of-eight wire sutures; continuous chromic #1 catgut on peritoneum catching the surgaloy wire sutures before they were tied; interrupted chromic #1 catgut on the rectus fascia between the wire sutures." No other record was presented to Special Term on defendant surgeon's motion to dismiss as time barred (CPLR 3211, subd [a], par 5). Defendant-appellant's affidavit, submitted on the motion, recites that he "used Surgalay wire sutures," a type of suture "commonly used in 1961 for all types of abdominal surgery for closures of incisions of the abdominal wall * * * as permanent suture material * * * so used for many years at the time of surgery upon [plaintiff-respondent]"; that they "are not removed and [he] *intentionally* left them in as a permanent indissoluble suture material [emphasis in original]." Further, that plaintiff "never notified [defendant-appellant] of any problems associated with this suture material, and therefore [he] had no opportunity to examine her or to evaluate if any problem did exist." No other affidavit by any person having personal knowledge of the underlying facts was presented to the court, all other affiants being attorneys for the parties at Special Term. The complaint as reproduced in the record is unverified. This factual summary derives, except, as above noted, from the decision of Special Term, based on the complaint, and the bills of particulars. The surgeon never saw his patient after August, 1961. However, in October, 1962, plaintiff returned to see the referring doctor who had sent her to defendant surgeon; he examined a large lump at the site of surgery, and told her "it was of no consequence" and "probably adhesions." Though suffering much discomfort and pain, and often confined to home and bed during the interim period, and being embarrassed by the grotesque lump, said at times to be the size of an orange and feared by her to be cancerous, she did not consult another doctor until July, 1975. The third doctor found suppuration at the site, and a protruding wire. He removed the sutures, described by him as "braided wires." This suit was commenced within a year thereafter—timely, if the *"Flanagan* rule" *(Flanagan v Mount Eden Gen. Hosp.,* 24 NY2d 427) applies. If it does not apply, this belated suit would have been untimely and defendant-appellant would clearly be entitled to prevail on his affirmative defense of limitation of time. Plaintiff claims this to be a case coming under the "foreign object rule" stated in *Flanagan (supra)* which sets the accrual time of a cause of action for the negligent act of leaving a foreign object (a surgical clamp in *Flanagan)* in the body of a patient, as the time of

discovery of that fact. A fixation device, placed intentionally, does not constitute a *Flanagan* foreign object, and we do not rely upon the lately enacted CPLR 214-a for this holding. We agree with Special Term that this statutory stricture of *Flanagan's* application does not operate here because of the lateness of its effective date, July 1, 1975. "Though the amendment does not apply here, the implied legislative intent is of significance to the court, and is declaratory of and confirms existing case law." *(Weber v Scheer,* 58 AD2d 520.) The sutures employed by defendant surgeon constitute a fixation device by definition, designed to hold the surgical closure in place. Even should such a fixation device fall short of performance of its intended function, it still does not come within the definition of "foreign object." See *Kearney v Jewish Mem. Hosp.* (65 AD2d 329), in which this court refused to follow the apparently contrary, though distinguishable, ruling in *Murphy v St. Charles Hosp.* (35 AD2d 64) where the Second Department had held a fixation device, which broke after insertion, to be "akin to" the *Flanagan* foreign object (p 67). And we are taught by *Matter of Beary v City of Rye* (44 NY2d 398), specifically reversing *Matter of Smalls v New York City Health & Hosps. Corp.* (55 AD2d 537) and *Merced v New York City Health & Hosps. Corp.* (56 AD2d 553)—both attempted extensions of *Flanagan*—that, by enacting new CPLR 214-a (L 1975, ch 109, § 6), "the Legislature left us no room but to conclude that it intended that *Flanagan* not be broadened beyond its existing confines" *(Matter of Beary v City of Rye, supra,* p 415). Special Term then held (97 Misc 2d 143, 148-149) "Accordingly, under the rule of the *Flanagan* case, as further refined by the Appellate Division of this department in the *Weber* case *(supra)* the date of actual or implied discovery would be the date of the accrual of the cause of action, based upon the wires found in plaintiff's body, provided (1) such wires were not a prosthetic or fixation device, or, (2) such wires were inserted as a prosthetic or fixation device but were improperly inserted or defective when inserted. Assuming that either of these conditions were met, a further issue of fact would then be raised as to the date when the plaintiff 'could have reasonably discovered the malpractice'. *(Flanagan [supra,* p 431.])* Finally * * * [after determining] the date of accrual of [the] cause of action under the *Flanagan* rule * * * this action would be barred unless it had been commenced within three years of such accrual date." Up to this point we have not parted company with Special Term's scholarly memorandum citing the cases on the "foreign object" rule. However, Special Term then found issues of fact precluding determination of the motion, and requiring remand for trial. On the meager record before us, we find no such issues, except such as are raised by speculation. For instance, plaintiff-respondent finds an issue of fact in the omission of the descriptive word "braided," applied by the third doctor in 1975 to what he then removed from plaintiff. The word "braided" was not used in defendant's report or affidavit. Based upon this word alone, plaintiff claims a factual issue exists as to whether the emplaced device was the same removed in 1975. There is no discernible doubt that the word "braided" describes the same multifilament suture described in the hospital record, and we deem this purported "issue of fact" to be frivolous. There is also a claim that defendant surgeon had violated some duty by leaving and not removing the fixation sutures after the device had served its purpose. That purpose was to remain where placed, to hold the closure secure. Though we give plaintiff's pleadings the best possible reading at this juncture, we cannot be persuaded that this unsupported theory has any validity. Without contradiction, defendant has stated that the procedure employed in installing a permanent fixation

device was a method "commonly used" and that plaintiff brought nothing to his attention thereafter which might alter his judgment. This claim is also frivolous. As to whether the wires had been improperly inserted or were defective, there is not a word of specification or detail which runs counter to the operation report; there is nothing in any of the papers to justify Special Term in finding such an issue. Nor are we persuaded that at some time within the many years of delay, plaintiff should not have been alerted that something was amiss to the extent that she should have inquired of the surgeon or a third doctor, even assuming that she might have been initially led astray by the judgment of the referring doctor in 1962. Her history of pain, disability, embarrassment, fear of cancer, etc., for more than a decade, if accepted as fact, is completely at variance with human experience if it did not constitute a predicate for realization that something was wrong and that medical intervention might be necessary to discover what was wrong, and to correct it. Taking every allegation in plaintiff's pleadings at face value, save only the claimed "duty" to remove the sutures constituting the fixation device—and this allegation falls in the face of the documentary evidence of the hospital report—the pleadings do not support application of the *"Flanagan* rule" to the object deliberately left in plaintiff's body, for medical reasons, in accordance with common medical practice. Even were the *Flanagan* rule to apply, plaintiff could have reasonably discovered the presence of the device in her body by making timely medical inquiry long before she did. Either way, a time limitation ran. The affirmative defense should have been sustained and the complaint dismissed against as against defendant-appellant. Concur—Murphy, P. J., Birns, Markewich, Lupiano and Silverman, JJ. [97 Misc 2d 143.]