**Sherill A. HALL and Roland C. Hall, Plaintiffs-Appellants,**

v.

**Dr. Paul ERVIN, Dr. Carl T. Duer and Crossville Medical Group, P.C., Defendants-Appellees.**

Supreme Court of Tennessee.

Dec. 6, 1982.

---

Ann Mostoller, Oak Ridge, for plaintiffs-appellants.

Jonathan H. Burnett, Knoxville, for defendants-appellees.

## OPINION

HARBISON, Justice.

The only question presented in this medical malpractice action is whether the claim is barred by the applicable statute of limitations, T.C.A. § 29–26–116, or whether it falls within the "foreign object" exception thereto. Both the trial court and the Court of Appeals held that the action was barred, and we are of the opinion that their conclusion was correct.

The action was not filed until May 29, 1980. It complains of negligent acts of appellees which occurred between September 1975 and June 1976. It therefore was not brought within one year from the date of the alleged negligent conduct, nor within three years thereof. T.C.A. § 29–26–116(a)(1) sets a general limitation period of one year, subject to an additional one year after discovery, if the alleged negligence is not discovered within the first year. T.C.A. § 29–26–116(a)(3), the third subsection of the statute, provides, however:

"In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the ·cause of action exists."

There is no claim of fraudulent concealment in the present case.

The "foreign object" exception is contained in the fourth subsection of the statute, as follows:

"The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered." T.C.A. § 29–26–116(a)(4).

The complaint alleged that appellant Sherill A. Hall had an intra-uterine contraceptive device installed at some time prior to her becoming a patient of appellees on September 2, 1975. The complaint does not allege when or where this device was in-

stalled, but it is clear that it was not inserted by appellees or any of their personnel.[1]

Apparently appellant Sherill A. Hall became pregnant despite the presence of this contraceptive device. The complaint alleges that she was a paying patient of appellees from September 2, 1975, through May 1976, for treatment during pregnancy, delivery of her child, and postpartum care for six weeks. Various personnel of appellees are alleged to have seen and treated Mrs. Hall during her pregnancy and on approximately three occasions following delivery of her child on May 8, 1976.

The complaint alleges that Mrs. Hall was x-rayed on September 2, 1975, and that the x-rays clearly showed the presence of the intra-uterine contraceptive device. It also alleges that Mrs. Hall reminded Dr. Paul Ervin of the presence of this device immediately before birth of her child.

After delivery of the child, Mrs. Hall alleges that she asked Dr. Ervin if the device had been expelled. The complaint alleges:

"That Dr. Ervin told her he could not find the device and did not advise her of any danger if the device remained or of any symptoms she should look for."

The complaint alleges that appellees were guilty of negligence in not determining whether the device remained in the uterus, and not advising her of its continued presence and of any concomitant dangers thereof. It is alleged that the presence of the device could have been determined by physical examination or by x-ray, and that this was not done.

In Paragraph XII of the complaint it is alleged:

"That Doctors Duer and Ervin deviated from the normal standard of care when they negligently failed to determine that the device was present and that they negligently failed to advise Plaintiffs of its presence."

Mrs. Hall alleged that following the birth of her child she continued to suffer severe pain and discomfort in her back and side for a considerable period of time. She suffered a continuous infection and was unable to be employed gainfully until after the device had been removed by another physician on September 18, 1979. She alleged that in the interim of over three years she had consulted other physicians but that she believed no intra-uterine device was present because of appellees' "negligent failure to advise Plaintiff of the continued presence of the device ...." For this reason she alleged that she "misinformed" other physicians who examined her and that the negligence of appellees "hindered their diagnoses and her recovery."

█ It is apparent that the essence of the allegations against appellees is their negligence in failing to discover the continued presence of the intra-uterine device and their failure to advise appellants thereof. Negligent diagnosis and treatment, however, are clearly barred by the three-year statute of limitations, T.C.A. § 29–26–116(a)(3). The physician-patient relationship between appellants and appellees terminated no later than June 1976 and the action was not brought until May 1980, nearly four years later.

█ The only basis upon which appellants claim that the statute is tolled is the "foreign object" exception contained in T.C.A. § 29–26–116(a)(4) previously quoted. Both courts below held that this exception was not applicable, and we agree.

Unlike similar statutes in other states, the Tennessee statute contains no definition of a "foreign object," but it specifically applies only to one which "has been negligently left in a patient's body." In this case appellees did not place the device into the body of Mrs. Hall, and their alleged

1. In her brief counsel for appellants states that the device was implanted by the Huntsville Health Department in Scott County, Tennessee, in May, 1975. This information does not appear in the complaint. The case rests upon the allegations of the complaint, which was dismissed upon a defense motion raising the statute of limitations. The final order of the trial judge makes some reference to a stipulation of counsel, but no written stipulation appears in the record on appeal.

negligence consisted of failure to discover that it remained after childbirth had occurred and after appellant made inquiry about it.

Counsel for appellants concedes in her brief before this Court that an intra-uterine device, deliberately placed into the body of a patient with her consent and knowledge, would not ordinarily be considered to be a "foreign object" within the meaning of the statute. It is nevertheless the contention of appellants that appellees "negligently left" the device in Mrs. Hall's body when they should have discovered its presence and should have removed it or warned her of it. She is bound to have known of its original insertion in May 1975 and, indeed, the complaint alleges that she advised appellees thereof when she employed them in September 1975 and again before her child was born in May 1976. She again referred to it after delivery, so that it clearly was not an unknown or undiscovered "foreign object" as late as May 1976.

Both courts below were of the opinion that the statutory exception was intended to apply to cases where something never intended to be inserted at all or something only temporarily utilized was negligently permitted to remain in a patient's body, such as a clamp or sponge following surgery, and not to an object which had been deliberately implanted there, such as an intra-uterine contraceptive device, a pacemaker, dental work or other devices knowingly and intentionally inserted and intended to remain for an indefinite period of time. We believe that this represents the legislative intent, as stated by the Court of Appeals, and that the conduct of appellees alleged in the complaint is not within the purview of the statutory exception relied upon by appellants. To hold under the circumstances of this case that appellees "negligently left" the device in Mrs. Hall's body, in our opinion, is not within the intended use of the words. Appellees did not place this device into her uterus; its presence was

known to the appellants; it was not inadvertently installed; and the negligence, if any, of appellees did not consist of anything more than a failure to discover or to diagnose its presence after a normal delivery had occurred and after inquiry had been made to them.

Appellants principally rely upon the case of *Darragh v. County of Nassau*, 91 Misc.2d 53, 397 N.Y.S.2d 553 (Sup.Ct.1977), *aff'd*, 63 A.D.2d 1010, 405 N.Y.S.2d 1020 (App.Div. 1978). In that case the alleged negligence consisted of failure to discover an intra-uterine device at a time when a second such device was inserted. The Court reasoned that ordinarily an intra-uterine device, deliberately installed with the consent of the patient, was not a "foreign" object. It concluded, however, that this could not be said of a second such device and that the original device became "or took on the character of" a foreign object when the second was inserted. 397 N.Y.S.2d at 555.

The New York statute involved in that case expressly excluded from the definition of a "foreign object," chemical compounds, fixation devices or prosthetic aids or devices. CPLR § 214–a. The Court recognized that a single intra-uterine device would, as a general rule, fall within this statutory exclusion.[2] Only because of the unique circumstances of the insertion of a second such device was the "foreign object" exception to the statute of limitations deemed applicable.

In other decisions, the New York courts have recognized that medical devices or appliances inserted or applied to the body do not constitute foreign objects. *See e.g., Cooper v. Edinbergh*, 75 A.D.2d 757, 427 N.Y.S.2d 810 (1980) (permanent suture material to effect a surgical closure). Courts of other jurisdictions have generally reached the same conclusion. *E.g., Shannon v. Thornton*, 155 Ga.App. 670, 272 S.E.2d 535 (1980) (dental bridge). In the latter case the court said:

2. *Cf. Rockwell v. Ortho Pharmaceutical Co.*, 510 F.Supp. 266 (N.D.N.Y.1981) (such device not "foreign object" within purview of statute

and "foreign object" exception not applicable to action against manufacturer thereof).

"Where, as here, an object is purposely placed in a body it cannot be said to have been 'left,' which, in the context of the statute, connotes a non-purposeful act." 272 S.E.2d at 536.

■ Further, we agree with the Court of Appeals that the statutory exception under consideration was intended to apply to cases where the defending health care provider was in some way responsible for the initial presence of the foreign object complained of. There are numerous cases where patients are injured by foreign objects such as projectiles, fragments of metal, wood and the like.[3] Medical treatment is often sought for removal or other care of such injury. If the negligence of a physician should consist of failure to remove such an object, in a sense he might be said to have "negligently left" it in the patient's body, but it is doubtful that such an error in professional diagnosis or care would be subject to the indefinite "foreign object" exception to the one-year or the three-year statute of limitations. The statute, in our opinion, contemplates negligence of a defending party in placing or permitting the intrusion of some object during surgery or other medical treatment and then failing to see that it is properly removed. The statutory provisions refer to discovery by the patient of "the alleged injury or wrongful act," and, in our opinion, this reference involves something more than mere negligence in diagnosis or treatment respecting an object which had been implanted or become imbedded in a patient's body by actions or conditions for which the defendant was not responsible. No reason has been suggested why negligence in the latter type of cases should not be subject to the general limitation period of one year, subject to the discovery exception, and to the outside limit of three years. Such cases are not essentially different from any other case of erroneous diagnosis, such as failure to detect cancer, ulcer or a fracture.

On the other hand, where the defendant himself negligently places or permits the intrusion of a foreign object,[4] there is good reason to allow an action to be brought after the lapse of an indefinite time, subject only to the patient's diligence in suing within one year after discovery of the "alleged injury or wrongful act." [5]

We have examined the legislative debates concerning the statutory provision involved here. The references therein dealt with concern over a physician's leaving "a pair of forceps inside of you or a sponge or anything else ...." An amendment to allow one year after discovery of such a "foreign object" was offered by a senator. However, a member of a special study committee of the Senate pointed out that the bill already contained such a provision. He read aloud the language now basically constituting T.C.A. § 29–26–116(a)(4). The proposed amendment was thereupon withdrawn.

We have examined other cases cited by appellants, but these did not involve "foreign object" exceptions to applicable statutes of limitations. We believe that the conclusion which we have reached is consistent with the holding of the majority of cases which have dealt with the subject and with the legislative intent. Under the facts alleged in this complaint we do not believe

3. *E.g., Runnells v. Rogers,* 596 S.W.2d 87 (Tenn.1980); *Baldwin v. Knight,* 569 S.W.2d 450 (Tenn.1978).

4. For illustration of myriad situations involving "failure to remove objects or substances inserted, intentionally or unintentionally, in the patient's body in the course of surgery or treatment without any intention of leaving them there permanently," see Annot. 10 A.L.R.3d 9, 15 (1966).

5. Without such a statute, in the absence of fraudulent concealment, the action could become time-barred unless there was "continuing negligence" arising from continuation of the physician-patient relationship. Thus in *Frazor v. Osborne,* 57 Tenn.App. 10, 414 S.W.2d 118 (1966), an action for negligence in leaving a surgical sponge in a wound, brought ten years after the operation, was held to be barred against a hospital and its personnel but not against a surgeon who had continued to treat the patient until a short time before suit was filed. *See also Osborne v. Frazor,* 58 Tenn. App. 15, 425 S.W.2d 768 (1968).

that it can properly be concluded that appellees "negligently left" a "foreign object" in the patient's body within the purview of the statutory exception.

The judgment of the Court of Appeals is affirmed at the cost of appellants.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.