William Paul BURRIS, Individually, and as Administrator of the Estate of Sue Gail Burris, Plaintiff/Appellant,

v.

Robert W. IKARD, M.D., Defendant/Appellee.

Court of Appeals of Tennessee, Western Section, at Nashville.

June 29, 1990.

Application for Permission to Appeal Denied by Supreme Court Sept. 24, 1990.

William B. Vest, Hendersonville, for plaintiff/appellant.

William P. Sutherland, of Watkins, McGugin, McNeilly & Rowan, Nashville, for defendant/appellee.

Charles W. Burson, Atty. Gen., and Reporter and Jerry W. Taylor, Asst. Atty. Gen., Nashville, for Atty. Gen., as intervenor.

TOMLIN, Presiding Judge, Western Section.

This appeal involves a wrongful death action brought in the Circuit Court for Davidson County against defendant, Dr. Robert Ikard, Hospital Corporation of America (also referred to as "H.C.A."), and others. Plaintiff's suit against Hospital Corporation of America Park View Hospital, involving almost identical issues, is reported in 773 S.W.2d 932 (Tenn.App.1989). The trial court granted summary judgment and dismissed plaintiff's suit against Ikard. The trial court also found T.C.A.

§ 29–26–116 to be constitutional, its constitutionality having been heretofore questioned by plaintiff and defended in the trial court by the Attorney General, who was allowed to intervene. On appeal, plaintiff has presented three issues relative to the trial court's action: Did the trial court err in (1) finding that plaintiff's claim was barred pursuant to T.C.A. § 29–26–116(a)(3); (2) finding and holding that plaintiff's claim did not come within the "foreign object" exception set out in § 29–26–116(a)(4); and (3) upholding the constitutionality of § 29–26–116. We find no error and affirm.

We adopt for our use the statement of facts set out by the Middle Section in *Burris v. Hospital Corporation of America*, 773 S.W.2d 932 (Tenn.App.1989):

The uncontroverted facts in the record are as follows:

On September 14, 1978, and thereafter Sue G. Burris, wife of plaintiff was a patient in Park View Hospital, owned by appellee and hereafter designated as H.C.A. Park View. Mrs. Burris was attended by her personal physicians who performed certain surgical procedures upon Mrs. Burris in the surgical area of the hospital. On September 19, 1978, Mrs. Burris's surgeon [Ikard] performed an open lung biopsy and removed a portion of the right lung. The surgeon instructed the attending nurse to provide him with Teflon felt. She obtained a Teflon felt from the storage area. The surgeon cut the Teflon felt into small pieces called "pledgets" which were used to support sutures in the closure of the lung. The pledgets were intended to remain in the lung permanently. At the time of the surgery, Teflon felt was the only device for supporting lung sutures and had been so used by the surgeon seven years without any complication. The presence of the pledgets enhanced the perpetuation of the infection in the lung. The infection eroded blood vessels which required the subsequent removal of the lung. Mrs. Burris died on December 11, 1987, of respiratory insufficiency

which was increased by the removal of the lung.

This suit was filed December 31, 1987. *Id.* at 933.

We note at the outset that summary judgment is proper only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.03.

## I. APPLICABILITY OF T.C.A. § 29-26-116

The first two issues presented by plaintiff relate to the applicability of T.C.A. § 29-26-116(a), which reads as follows:

**Statute of limitations—Counterclaim for damages.—(a)**

(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.

(2) In the event the alleged injury is not discovered within the said one (1) year period, the period of limitation shall be one (1) year from the date of such discovery.

(3) In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

(4) The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

Plaintiff insists that this case falls within the "foreign object" exception of T.C.A. § 29-26-116(a)(4). Therefore his suit is not barred by the applicable statute of limitations and statute of repose, inasmuch as he filed suit within one year after the alleged wrongful act was "discovered." It is undisputed that the Teflon felt pledgets were intentionally placed in the decedent's lung at the time the biopsy surgery was performed in order to assist in closing the wound. Inasmuch as Ikard intentionally placed the pledgets in plaintiff's decedent's body, they cannot and do not qualify as a "foreign object." *Hall v. Ervin,* 642 S.W.2d 724 (Tenn.1982). Plaintiff's suit against H.C.A. Park View Hospital was based on the same identical facts. In that case, the Middle Section of this Court found that the pledgets were not "foreign objects," and that subsection (4) of § 29-26-116(a) did not apply. *Burris v. H.C.A., supra,* at 934. In so holding, that Court stated:

The uncontradicted evidence shows that the Teflon felt pledgets were intentionally and not negligently left in the patient's body. In *Hall v. Ervin,* Tenn. 1982, 642 S.W.2d 724 the Supreme Court held that TCA § 29-26-116(a)(4) was inapplicable to the deliberate and intentional insertion of an intra-uterine device. In that case, the device was not inserted by the defendant but was later "left" in place by a failure to discover on examination. Also discussed is the obvious knowledge and consent of the patient as to the original insertion. However, in discussing the meaning and intent of the statute, the Supreme Court said:

Both courts below were of the opinion that the statutory exception was intended to apply to cases where something never intended to be inserted at all or something only temporarily utilized was negligently permitted to remain in a patient's body, such as a clamp or sponge following surgery, and not to an object which had been deliberately implanted there, such as an intra-uterine contraceptive device, a pacemaker, dental work or other devices knowingly and intentionally inserted and intended to remain for an indefinite period of time. We believe that this represents the legislative intent, as stated by the Court of Appeals,.... (at page 727)

*Id.* at 934.

Plaintiff contends that his suit was timely filed pursuant to subsection (3) of T.C.A. § 29-26-116(a). He further contends that

Ikard's use of pledgets to close the incision to the lung and his failure to so advise plaintiff or his decedent constituted fraudulent concealment. Plaintiff asserts that the statute of limitations was tolled due to this fraudulent concealment, and that the filing of his action on December 31, 1987 was a timely commencement, being within one year after the discovery on January 5, 1987 that a cause of action existed.

Although the trial court did not specifically address the fraudulent concealment question, it concluded that plaintiff's action was "barred by the applicable statutes of limitation and repose." Defendant contends that there was no fraudulent concealment, and that plaintiff's action is barred by § 29–26–116(a)(3), since the alleged act occurred on December 29, 1978 and suit was not filed until December 31, 1987, more than nine years later.

██ It is undisputed that Ikard intentionally placed the pledgets in plaintiff's decedent's body. He planned to leave them there permanently in order to support the tissue in the area of the incision, his objective being to enhance the prospects of an air-tight seal in the decedent's lung. At the time Ikard performed the open-lung biopsy, pledgets were the best devices for supporting lung sutures. Ikard was not aware of any warning against the use of pledgets at the time he performed the biopsy. The procedure and operative technique of open-lung biopsy was discussed with plaintiff's decedent prior to the operation. Ikard conceded that he never communicated to plaintiff's decedent or to plaintiff following the biopsy the fact that he used Teflon pledgets to aid in the closing of the incision to decedent's lung. Defendant stated without contradiction that it was not the standard of care in the community to discuss with a patient after surgery a particular instrument or device used in surgery, such as pledgets. At the time he performed the open-lung biopsy, utilizing the pledgets to close the incision, Ikard did not know nor could he have known of any facts he might conceal that would give rise to a cause of action on behalf of plaintiff or his decedent. We conclude that these facts

do not rise to the level of fraudulent concealment and therefore the statute of limitations was not tolled by subsection (3).

## II. THE CONSTITUTIONALITY OF T.C.A. § 29–26–116(a).

██ Plaintiff next contends that T.C.A. § 29–26–116(a) is unconstitutional and that it violates the equal protection provisions of the Tennessee or U.S. Constitution and the "open courts" provision of the Tennessee Constitution. We find this contention to be without merit.

In *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978), our Supreme Court held that T.C.A. § 29–26–116 does not violate the equal protection clause of either the U.S. or Tennessee Constitution, or the "open courts" provision of the Tennessee Constitution. In so holding, the court stated:

At the time the legislature passed the statute of limitations eventually codified as Sec. 23–3415(a), T.C.A., this state and the nation were in the throes of what was popularly described as a "medical malpractice insurance crisis." Because of alleged increasing numbers of claims, insurance companies had grown reluctant to write medical malpractice policies. Where policies were available, premiums had risen astronomically.

The legislature could have seen in this situation a threat not only to the medical profession and its insurers, but also to the general welfare of the citizens of this state. As liability costs skyrocketed, so would the cost of health care. Physicians would be encouraged to cease practice or contemplate early retirement, and the number of available physicians would decrease. The practice of "defensive medicine," spawned by fear of costly legal actions, would lead to a lower quality of health care in general. These considerations may or may not have been valid; however, it is apparent that they were accepted by the legislature and formed the predicate for its action.

In addition, it could be argued that to the extent that safe estimates required by actuarial uncertainty, aggravated by the extended period during which a phy-

**250**

sician could be subject to potential liability, contributed to the increase in malpractice insurance costs, "it is understandable that a legislature intent upon halting such phenomenal increases would seek some method to increase the certainty of such estimates," i.e., an absolute three-year limit on the time within which actions could be brought. Note, *Malpractice in Dealing with Medical Malpractice??*, 6 Mem.St.L.Rev. 437, 459 (1976).

*Id.* at 826.

Plaintiff seeks to distinguish *Harrison* from the case at bar by arguing that the statute, if applied to this case, would have the effect of foreclosing plaintiff's cause of action before it accrued, and that this was not the result in *Harrison*. The Attorney General concedes that the application of the statutes to the case at bar would have such an effect, but insists such an application is constitutional, citing *Cantrell v. Buchanan*, 14 T.A.M. 18-13, 1989 WL 25598 (Mar. 22, 1989) appeal denied (June 5, 1989). In upholding the constitutionality of § 29-26-116(a), this Court stated:

> The circumstances of this case are compelling: Tenn.Code Ann. § 29-26-116(a)(3) bars the plaintiffs' right to seek redress before they even knew about the injury. Despite the harshness of this result, this court cannot simply abrogate the legislature's enactment. The Supreme Court upheld the constitutionality of Tenn.Code Ann. § 29-26-116(a)(3) in *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn.1978). (The court took notice of the medical malpractice insurance crisis which prompted the legislature to enact the three-year cap.) The court noted that, in the absence of constitutional defects, such policy matters are for the legislature, not for the courts. *Id.*

*Id.* at 3-4.

Plaintiff's attempt to distinguish *Cantrell* is neither convincing nor persuasive.

Accordingly, the judgment of the trial court granting summary judgment in favor of Ikard is affirmed. Furthermore, we affirm the trial court's decision upholding the constitutionality of § 29-26-116. Costs in this cause are taxed to plaintiff, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.