Mary Jane CHAMBERS, et al.

v.

John R. SEMMER, M.D., et al.

Supreme Court of Tennessee,
at Knoxville.

May 4, 2006 Session.

July 3, 2006.

We granted review in this medical malpractice case to determine whether a hemoclip that is intentionally used but negligently placed and negligently left in a patient's body following surgery may be considered a "foreign object" that establishes an exception to the one-year statute of limitations and the three-year statute of repose. The trial court denied the defendant physicians' motions for summary judgment after finding that a hemoclip may be a "foreign object" under Tennessee Code Annotated section 29–26–116(a)(4) (2005). Although the trial court granted an interlocutory appeal, the appeal was denied by the Court of Appeals. *See* Tenn. R.App. P. 9. We granted review and now affirm the trial court's order denying the defendants' motions for summary judgment for the reasons set out in this opinion. The case is remanded to the trial court for further proceedings.

## BACKGROUND

This interlocutory appeal involves a medical malpractice action filed by the plaintiff, Mary Jane Chambers ("Chambers"), against the defendants, Dr. John R. Semmer ("Semmer") and Dr. Kenneth Cofer ("Cofer"). The following summary of the proceedings is taken from the pleadings, affidavits, and deposition excerpts filed by the parties.

On December 1, 1997, Chambers was examined by Dr. Semmer because of her complaints of acute vaginal discharge. According to Dr. Semmer's affidavit, after a pelvic examination of Chambers revealed a mass, he ordered an abdominal CT scan. The CT scan showed a complex mass with probable involvement of the left ureter,[1] as

Gary G. Spangler and Travis J. Ledgerwood, Knoxville, Tennessee, for the Appellant, John R. Semmer, M.D.

Edward G. White, II, and B. Chase Kibler, Knoxville, Tennessee, for the Appellant, Kenneth Cofer, M.D.

Timothy A. Priest and H. Stephen Gillman, Knoxville, Tennessee, for the Appellees, Mary Jane Chambers and J. Clayton Chambers.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

---

1. A ureter is one of two ducts that transmit urine from each kidney to the bladder.

well as three cystic lesions in the liver. Semmer ordered an exploratory laparotomy, which is a surgical incision into the abdominal wall, to remove the mass, which he believed was obstructing the left ureter.

On December 12, 1997, Chambers met with another physician, Dr. Cofer, for a consultation regarding the mass found on the abdominal CT scan. According to Dr. Cofer's affidavit, Chambers had a complex mass, a partially obstructed left ureter, enlarged lymph nodes, and loss of fascial planes on her left pelvic sidewall.

On December 18, 1997, Drs. Semmer and Cofer performed an exploratory laparotomy to remove the suspicious mass. Both Dr. Semmer's and Dr. Cofer's affidavits state that Semmer removed the left pelvic mass and that Cofer performed a ureterolysis of the left ureter. During the surgery, hemoclips[2] were intentionally placed on Chambers' posterior uterine arteries to control bleeding. Although a vessel loop[3] was placed on the ureter for identification, both doctors stated that a hemoclip was not used on the ureter. Moreover, Dr. Semmer stated that the vessel loop was removed from the ureter before the surgery was completed and that pre- and post-operative equipment counts showed "that all vessel loops were accounted for and removed...." Dr. Cofer likewise stated that the vessel loop count "indicat[ed] removal of all vessel loops from Chambers' body before the conclusion of the procedure."

After the 1997 surgery, Chambers recovered and suffered no symptoms until January of 2002, when medical tests demonstrated that her left kidney was not functioning. On January 6, 2003, she filed this medical malpractice complaint against Drs. Semmer and Cofer alleging that the damage to her left kidney had been caused by a hemoclip that had been intentionally used but negligently placed and negligently left on her ureter following the 1997 surgery.

By March of 2003, Drs. Semmer and Cofer each had filed motions for summary judgment. They argued that Chambers' action was barred by the one-year statute of limitations and the three-year statute of repose because the surgery had occurred in 1997 and the complaint was not filed until January of 2003. See Tenn.Code Ann. § 29–26–116(a) (2005).

In response, Chambers argued that the complaint was timely because the hemoclip left in her body after the surgery was a "foreign object" under Tennessee Code Annotated section 29–26–116(a)(4):

> The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body, in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

(Emphasis added).

Chambers relied on the affidavit of Dr. Gerard M. Callaghan, who stated "that one of the [hemo]clips which was intended to be placed on [Chambers'] uterine artery was actually put on the left ureter." He also stated that the "clipping of the left ureter ... blocked the flow of urine from the left kidney with the result that the kidney has become nonfunctional and has atrophied." Dr. Callaghan stated that "[c]lipping the left ureter, and leaving the clip on the left ureter at the conclusion of the surgery[,] are both actions which fall below the recognized standard of acceptable medical practice for obstetrics and gynecology...." He concluded that Drs.

---

**2.** A hemoclip is a small, metallic device used to control bleeding during surgery.

**3.** A vessel loop is a small holding device used for identification purposes during surgery.

Semmer and Cofer "should have removed any [hemo]clip that was inadvertently placed on the ureter" and that "it was certainly never intended for a [hemo]clip to be [either] placed on the left ureter or left on the ureter at the conclusion of the surgery."

Chambers also relied on the deposition testimony of Dr. Steven J. Addonizio, a radiologist who stated that a hemoclip had obstructed Chambers' ureter:

My confidence level is 95 percent that it's the clip that is occluding the ureter, as demonstrated on the pictures where in one picture you've got the ureter, the dilated ureter, and you can start seeing the top of the clip. In the next picture, you see the clip. The next picture, you see the ureter that's normal in size. And on the picture where you see the clip, you don't see the ureter anywhere else. So that's why my confidence level is 95 percent that that's over the ureter.

Addonizio stated that "obstruction of a ureter basically kills the kidney."

The trial court denied the motions for summary judgment but granted the defendants' motion for an interlocutory appeal. The trial court stated as grounds that the appeal would prevent needless, expensive, and protracted litigation and that there was a need to develop a uniform body of law on this issue. The Court of Appeals, however, did not grant the interlocutory appeal. *See* Tenn. R.App. P. 9(c).

After reviewing the defendants' application for permission to appeal and the applicable authority, we granted this appeal.

## STANDARD OF REVIEW

Summary judgment is appropriate where the trial court determines that the evidence, when viewed in a light most favorable to the non-moving party, raises no genuine issues of material fact. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court's review of a trial court's summary judgment ruling is de novo with no presumption of correctness. *Id.; see also Nelson v. Wal–Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn.1999).

## ANALYSIS

The parties agree that the primary issue in this interlocutory appeal is whether the patient Chambers' complaint for medical malpractice was barred by the one-year statute of limitations or the three-year statute of repose. *See* Tenn.Code Ann. § 29–26–116(a)(1) and (3) (2005). The parties, however, characterize the underlying aspects of the issue much differently. Accordingly, we begin by summarizing the arguments asserted by both sides on appeal.

Drs. Semmer and Cofer argue that a surgical hemoclip intentionally placed in a patient's body with the intent that it permanently remain cannot be a "foreign object" that establishes an exception to the one-year statute of limitations or the three-year statute of repose under Tennessee Code Annotated section 29–26–116(a)(4), even if the surgery is performed negligently. They contend that any other conclusion would eviscerate the statute of limitations and the statute of repose in cases where *any* object is intentionally inserted into a patient's body with the intent that it permanently remain in the patient; they cite pacemakers, stints, and implants as examples of such permanent objects. In other words, Drs. Semmer and Cofer argue that courts should look to the nature and design of the surgical object in determining whether that object may be a "foreign object."

Chambers, on the other hand, argues that a hemoclip that is "negligently placed and unintentionally left by a physician in a patient's body with no intent that it remain where placed" is a "foreign object" under Tennessee Code Annotated section 29–26–

116(a)(4). Chambers disagrees with the defendants' claim that the hemoclip was an object intentionally placed inside her body with the intent to remain permanently; to the contrary, Chambers argues that the defendants did not intend to place a hemoclip on her ureter and certainly did not intend for a hemoclip to remain there permanently. Thus, Chambers urges this Court to conclude that the hemoclip was "negligently left" in her body and was a "foreign object" under section 116(a)(4).

We begin our analysis with Tennessee Code Annotated section 29–26–116(a), which provides in part:

(1) The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28–3–104.

. . .

(3) In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

(4) *The time limitation herein set forth shall not apply in cases where a foreign object has been negligently left in a patient's body,* in which case the action shall be commenced within one (1) year after the alleged injury or wrongful act is discovered or should have been discovered.

(Emphasis added).

Both the defendant doctors and the plaintiff rely on *Hall v. Ervin,* 642 S.W.2d 724 (Tenn.1982), as they interpret the foreign object exception of section 29–26–116(a)(4). In *Hall,* the plaintiff alleged that the defendant physician was negligent in failing to discover and remove an intrauterine device (IUD) that had been inserted by a previous doctor. Although the complaint was filed nearly four years after

the defendant physician's conduct, the plaintiff alleged that the IUD was a "foreign object" that precluded the application of the one-year statute of limitations or the three-year statute of repose under section 116(a)(4). This Court rejected that argument, stating:

> [T]he statutory exception was intended to apply to cases where something never intended to be inserted at all or something only temporarily utilized was negligently permitted to remain in a patient's body, such as a clamp or sponge following surgery, and not to an object which had been deliberately implanted there, such as an intra-uterine contraceptive device, a pacemaker, dental work or other devices knowingly and intentionally inserted and intended to remain for an indefinite period of time.

*Id.* at 727 (emphasis added). The Court emphasized that the foreign object exception set out in section 116(a)(4) did not apply because the plaintiff knew about the IUD, that the IUD was not inadvertently inserted, and that the defendant's negligence "did not consist of anything more than a failure to discover or to diagnose [the] presence [of the IUD]." *Id.* The Court also stressed that the statute "was intended to apply to cases where the defending health care provider was in some way responsible for the initial presence of the foreign object complained of." *Id.* at 728; *compare Burris v. Ikard,* 798 S.W.2d 246, 248 (Tenn.Ct.App.1990) (Teflon pledgets were not "foreign objects" where they had been properly placed and not "negligently left" in the patient).

Because *Hall* does not address the exact circumstances before us, both parties also rely on decisions from other states. For example, plaintiff Chambers cites *Ivey v. Scoggins,* 163 Ga.App. 741, 295 S.E.2d 164 (1982), as persuasive. In *Ivey,* the plaintiff alleged that the loss of her left kidney was

caused by a suture that the defendant had negligently placed into and then left in her ureter. In holding that the complaint was timely, the Georgia Court of Appeals held that the suture was a "foreign object":

> [W]here the plaintiffs have alleged the placement of an internal suture during the course of a surgical procedure in an organ or other tissue not ordinarily involved in that procedure and the defendant physician has presented no evidence that the presence of the suture is the result of proper medical procedure, the suture is a "foreign object".....

*Id.* at 743, 295 S.E.2d 164 (footnote omitted). The court clarified that "[a] suture placed appropriately and in accordance with recognized medical procedures" would not be classified as a "foreign object." *Id.* at 743 n. 1, 295 S.E.2d 164; *see also Ogle v. DeSano,* 107 Idaho 872, 693 P.2d 1074 (1984) (holding that intra-uterine device inadvertently left in patient's body was a foreign object).

Drs. Semmer and Cofer rely primarily on cases from New York and South Dakota, i.e., *Vinciguerra v. Jameson,* 208 A.D.2d 1136, 617 N.Y.S.2d 942 (N.Y.App. Div.1994), and *Beckel v. Gerber,* 578 N.W.2d 574 (S.D.1998). In *Vinciguerra,* the plaintiff alleged that a hemoclip negligently placed on her ureter later damaged her kidney. Interpreting a New York statute, the court held that a hemoclip, or "other fixation device," is not a foreign object where it has been intentionally placed into a patient with the intent that it remain permanently. *Id.* at 944 (citing *Rockefeller v. Moront,* 81 N.Y.2d 560, 601 N.Y.S.2d 86, 618 N.E.2d 119 (N.Y.App.Div. 1993)). The New York court, however, interpreted a statute that specifically states that a " 'foreign object' shall not include a ... fixation device...." *Id.* at 942 (citing N.Y. Cons.L. Serv. § 214(a)); *see also Rockefeller,* 81 N.Y.2d at 560, 601 N.Y.S.2d 86, 618 N.E.2d 119.

In *Beckel,* the Supreme Court of South Dakota held in the absence of a statute that a hemoclip was not a "foreign object" even where the complaint alleged that the plaintiff lost a kidney because doctors had negligently placed a hemoclip on her ureter. 578 N.W.2d at 577. The *Beckel* court, however, followed *Vinciguerra* and other New York cases, even though those cases involved a specific New York statute excluding "fixation devices" from the meaning of "foreign objects." Moreover, the *Beckel* court was concerned that a different holding would require it to adopt a discovery rule, under which a statute of limitations commences when an injury is discovered, and would require it to replace its long-standing "occurrence rule," under which a statute of limitations begins to run when a negligent act occurs. *Id.* at 577–78.

Finally, all parties discuss *Hershley v. Brown,* 655 S.W.2d 671, 675 (Mo.Ct.App. 1983), in which the court held that a tubal ligation instrument was not a "foreign object" that tolled the statute of limitations because it was "intentionally introduced" into the patient's body and "intended to remain." The court clarified that the "foreign object" exception may apply where an object is "introduced and negligently permitted to remain in the body" and not where an object "is intentionally introduced in the body and is intended to remain there, although the procedure itself is performed in a negligent manner." *Id.* at 675; *see also Fisher v. McCrary–Rost Clinic,* 580 N.W.2d 723 (Iowa 1998) ("foreign object" exception not applicable).

■ After considering the language of Tennessee Code Annotated section 29–26–116(a)(4) and thoroughly examining the foregoing cases, we conclude that the trial court properly denied the defendants' motions for summary judgment for the following reasons.

First, the plain language of Tennessee Code Annotated section 29–26–116(a)(4) requires that a foreign object be "negligently left in a patient's body...." The statutory language does not specifically exclude hemoclips or "fixation devices." *Compare Vinciguerra*, 617 N.Y.S.2d at 944. Moreover, the statute does not support the defendants' position that an object used *intentionally* and designed to remain *permanently* may never be a foreign object. Had the legislature intended to create such a broad exclusion, such language would be in the statute. *See Hall*, 642 S.W.2d at 727. Instead, all that is required under Tennessee Code Annotated section 29–26–116(a)(4) is that an object be "negligently left in a patient's body."

■ Second, this Court's decision in *Hall* demonstrates that section 116(a)(4) requires an analysis of many factors. 642 S.W.2d at 727. For instance, *Hall* indicates that the exception in section 116(a)(4) applies to cases where (a) an object never intended to be inserted during the surgery is negligently permitted to remain in a patient's body or (b) an object temporarily used in the surgery is negligently permitted to remain in a patient's body. *Id.* Moreover, *Hall* explains that a court may also consider additional factors such as whether the plaintiff knew about the object, whether the defendant was in some way responsible for the initial presence of the object, and whether the defendant negligently inserted the object. *Id.* In short, a court must look beyond whether a surgical object or device is *designed* to be used intentionally and to remain permanently and must fully consider the circumstances of each case.

Third, *Hall* is consistent with the better-reasoned and more persuasive decisions in other states.[4] In *Ivey*, for instance, the Georgia appellate court emphasized that "where the placement of an internal suture during the course of a surgical procedure *in an organ or other tissue not ordinarily involved in that procedure ... [and] the suture is [not] the result of proper medical procedure, the suture is a foreign object....*" 295 S.E.2d at 167 (emphasis added); *see also Hershley*, 655 S.W.2d at 675 (where the Missouri appellate court clarified that the "foreign object" exception applies if an object is "introduced and negligently permitted to remain in the body...."").

In the present case, the defendants' principal argument that hemoclips are used intentionally and are intended to remain permanently overlooks these critical points. Under the plaintiffs' theory and proof, a hemoclip was *not* placed on the patient Chambers' ureter intentionally, and it was *not* intended to remain there permanently; moreover, they argue that the failure to detect the wrongfully-placed hemoclip resulted in its being "negligently left" in Chambers' body. Although the defendants assert that a hemoclip was not left in Chamber's body, we must review motions for summary judgment in a light most favorable to the plaintiffs as the non-moving party.

In sum, Chambers has alleged that a hemoclip was negligently attached to her ureter and negligently left in her body after the surgery. Drs. Semmer and Cofer deny that a hemoclip was used or left on the ureter and assert that, in any event, a hemoclip cannot be a foreign object. As

4. Indeed, as noted above, many of the decisions cited by the defendants are distinguishable. The New York line of cases, for instance, is based on a statute that excludes "fixation devices" from the meaning of "foreign object," *see Vinciguerra*, 617 N.Y.S.2d at 944, whereas Tennessee has no such statute. The South Dakota case involves the "occurrence" rule in applying the statute of limitations, *see Beckel*, 578 N.W.2d at 578, whereas Tennessee employs the "discovery" rule.

these issues clearly raise genuine issues of material fact under Tennessee Code Annotated section 29–21–116(a)(4), we hold that the trial court properly denied the defendants' motions for summary judgment. The case is remanded to the trial court for further proceedings.

## CONCLUSION

After considering the record and applicable authority, we conclude that a hemoclip that is intentionally used but negligently placed and negligently left in a patient's body following surgery may be a "foreign object" under Tennessee Code Annotated section 29–26–116(a)(4) that establishes an exception to the one-year statute of limitations and the three-year statute of repose. Accordingly, we affirm the trial court's order denying the defendants' motions for summary judgment and remand to the trial court for further proceedings. Costs on appeal are taxed to the defendants-appellants, John R. Semmer, M.D., and Kenneth Cofer, M.D., and their sureties, for which execution shall issue if necessary.