[No. 7837.]

## THE SYMES INVESTING COMPANY v. WHEELOCK.

1. LANDLORD AND TENANT—*Eviction*—The tenant's voluntary surrender of the premises is not an eviction.

Nor is the landlord's entry, after the abandonment of the premises by the tenant. Especially is this true where such entry of the landlord is invited and consented to by the tenant.

2. ——*Concessions made by Landlord to New Tenant, After Surrender by a Former Tenant*, prior to the lapse of his term must be borne by the landlord.

*Error to the Denver County Court*—HON. GEORGE W. DUNN, Judge.

Mr. J. FOSTER SYMES, for plaintiff in error.

Mr. FRED W. PARKS, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court.

The action was begun in a justice's court, to recover from the defendant the sum of $266.50, a balance due on rent for the months of November and December, 1911, under a written lease of offices numbered 613 to 619 in the Symes Building, Denver, occupied by the Northwestern Mutual Life Insurance Company, of which defendant was general agent. The justice of the peace gave judgment for $182.50 in favor of plaintiff. Defendant tendered $91.25, being the amount due under the lease to the 15th of November, and upon refusal of plaintiff to accept it appealed the case to the county court.

There were no pleadings, but a stipulation, filed before trial in the county court, shows that plaintiff is a corporation of the state, and owner of the Symes Building; that defendant had a lease from plaintiff of rooms 613 to 619 inclusive in that building, which expired December 31, 1911, at a monthly rental of $182.50; that

defendant voluntarily vacated the premises on November 11th, 1911, and paid no rent for November and December of that year, but made tender of $91.25 and kept the same good, which plaintiff refused; that plaintiff received from other tenants for a part of the premises, as rental during November and December, the sum .of $98.50; that certain letters hereinafter set forth, passed between plaintiff and defendant; and that plaintiff, between November 15th and December 31st, 1911, made repairs and alterations on the premises at an approximate cost of $510.00 after defendant had vacated.

On September 28th, 1911, the defendant wrote plaintiff as follows:

"I shall vacate offices in the Symes Building at termination of lease. I expect to vacate offices on November 15th, and if you should desire to have same occupied by tenants from that time, satisfactory arrangements could probably be made."

On October 19th following, the plaintiff answered:

"Referring to your letter of September 28th, beg to say that we will be glad to take over any part of your space as fast as we rent it, on the understanding that we allow you the same price that we rent it for—provided we can have possession a few days ahead of time to make necessary changes.

"If this is satisfactory, please let us know the earliest date that we could have rooms 618 and 619."

The defendant did not answer that letter. At various times after the exchange of the foregoing correspondence, and while defendant was still occupying the rooms, Mr. Symes, agent of plaintiff company, showed them to numerous prospective tenants in the presence of the defendant, who on such occasions said nothing, because, as he testified, he did not wish to embarrass Mr. Symes. The two had personally transacted no business for about two years. The business incident to the tenancy had been transacted with the cashier of defendant, who signed and delivered the rent checks. The first

week in November Mr. Symes called to collect the rent
for that month, and was requested by the cashier to
wait until plaintiff had re-rented the rooms and adjust
the rent later on, to which he acceeded.  The Monday
following the Saturday on which the defendant vacated
the premises, plaintiff put workmen to cleaning and
altering the rooms to suit new tenants. When defendant
learned of this he wrote the following letter:

"I am enclosing you herewith my check for $91.25,
being rent from November 1st to November 15th, and
am sending you under separate cover, keys to the offices
which I heretofore held under lease from you, in the
Symes Building, as I notice you have taken possession of
the premises and consequently terminated my lease."

To. which plaintiff immediately replied:

"We beg to acknowledge receipt of your letter of
November 15th, enclosing check for $91.25, which we
return.

"We would be very glad to receive the same on
account of November rent, per terms of your lease, or as
rent to November 15th, but on the understanding that
we have in no wise released you from the terms of your
lease, which we expect you to carry out.

"You very well know that our understanding was
that we are to allow you on your lease, credit for any
rent we receive on your space, in accordance with our
letter of October 19th, and our verbal conversation with
your office.  It was on this understanding that we put
workmen in part of your rooms to make the necessary
alterations for other tenants.

"If you desire the keys for any purpose we will be
glad to send them back to you."

The foregoing are the material and undisputed facts
of the case.

The plaintiff sued to recover the balance due under
the lease, being $365.00 for the months November and
December, less $98.50, the amount received from other
tenants during that period, or $266.50.  At the conclu-
sion of the testimony defendant moved a non-suit, plain-
tiff moved for a directed verdict, and defendant, in turn,

moved for a directed verdict in favor of plaintiff for $91.25, the amount tendered, all of which motions the court overruled. The jury were instructed, retired and returned a verdict for plaintiff for $91.25. Plaintiff's motion for a new trial was overruled, and it prosecutes this writ of error.

Plaintiff in error contends that under the facts the question of eviction is not involved, and that the court erred in submitting it to the jury. If the facts raise the question, it was properly submitted, and the judgment may not be disturbed; if not, the court should have directed a verdict for plaintiff for $266.50 less free rent.

It is fundamental that a tenant cannot, by voluntarily surrendering possession of the premises, evict himself. *Letteck v. Holland,* 63 Ill. 335. The renting of other quarters by defendant, notice of vacation on a certain date and vacation of the premises accordingly, constituted an abandonment, and entry thereafter by the landlord was not an eviction. *Humiston et al. v. Wheeler,* 175 Ill. 516, 51 N. E. 803. It is essential to even constructive eviction that the conduct of the landlord be more than a mere trespass and such as to effectually deprive the tenant of the use and benefit of all or some part of the premises. 2 Underhill on Landlord and Tenant, §§ 670, 671. In the case at bar the plaintiff entered upon the premises at the invitation of the defendant. If defendant had not written the letter of September 28th, showing a desire to have the premises occupied and inviting plaintiff to act to that end, no controversy could have arisen. The plaintiff acted upon the suggestion of the defendant and accepted the proposal, with the request that, if the terms of acceptance were satisfactory, it be advised when certain of the rooms could be had. The defendant made no answer to that letter, but for over three weeks kept silent, during which time the plaintiff showed the premises to numer-

ous prospective tenants in his presence and in the presence of his cashier. It is not apparent why embarassment would have resulted to the plaintiff's agent from anything which defendant might have said on such occasions respecting their relations under the lease. It was not until after he had vacated the rooms, when he learned that plaintiff was altering and cleaning them, that he denied his liability under the lease, because, as he claims, "satisfactory arrangements" had not been made for a new tenant. Considering his letter of September 28th, the plaintiff's reply thereto, together with what followed as a consequence of those letters, the defendant should have been as solicitous to ascertain the true conditions, regardless of the fact that he was about to vacate, as he evidently was to escape a valid obligation through circumstances which he apparently thought favorable to the accomplishment of that result. It is a fair conclusion from the undisputed facts that defendant knew, or should have known, the entire situation. To declare that the acts of plaintiff, invited as they were by the defendant and by his silence approved, amount to an eviction, would be not only contrary to law, but against good conscience, and would lend encouragement to others to attempt by like methods to escape just obligations. There is a total absence of facts even tending to show an eviction. The motion of plaintiff for a directed verdict should have been sustained.

This case is clearly distinguishable from those cited by defendant in error to support the contention that there was evidence of an eviction. Neither of those cases are upon the facts even analagous to this one. We do not question the law as stated in *Hyman v. Jockey Club Co.,* 9 Colo. App. 300, 48 Pac. 671. In that case there was a forcible entry and detainer, the sheriff holding the premises for some days under orders from the landlord before turning over the keys to the latter.

Such acts were there held to amount to an eviction in law. The principles upon which that decision was based are, quoting from the opinion, as follows:

"The rule of law is well settled, that, if the lessor himself wrongfully deprives the tenant of the whole or any part of the premises, the tenant is discharged from the payment of the whole rent until the possession is restored. Tayl. Landl. & Ten., secs. 378-380. In 2 Wood, Landl. & Ten. 1096, the rule is stated that: 'An actual expulsion of the tenant, or intentional disturbance by the landlord, or by any other person acting by his authority, or by virtue of a legal right vested in them in any manner, which so seriously disturbs the tenant's possession as to compel an abandonment of the premises by him, or which deprives him of their beneficial enjoyment, amounts to an eviction, and the rent is suspended from the time of such disturbance.'"

The court there held that the acts shown amounted to a wrongful deprivation of possession of the premises and an actual expulsion or intentional disturbance of the tenancy, committed by or through the landlord. And in the case of *MacKeller v. Sigler,* 47 Howard Prac. Rep., 20, the tenant abandoned because the premises had become unfit for occupancy because of an overflow of water from an adjoining house, and thereafter the landlord entered to make repairs, and relet the house to another, of his own motion. The gist of that decision is based upon the rule contained in the following quotation from the opinion therein:

"In the absence of a stipulation to that effect, in the agreement, creating the tenancy, the landlord has no right, except, perhaps, where it may be requisite to prevent waste, to enter the demised premises during the term, without the consent of his tenant, to make repairs; and if he does, he will be deemed a trespasser, and become liable as such."

In one of the foregoing cases the landlord forcibly evicted the tenant, and in the other he took possession of the premises after the tenant had been driven from

the house by an overflow of water from adjoining prop-
erty. In the case at bar there was no wrongful depriva-
tion, actual expulsion or intentional disturbance, nor
was the entry without the consent of the tenant. On
the contrary, the landlord went into possession not only
with the consent, but by the invitation of his tenant. So
that it is manifest these conditions have no application
here.

The plaintiff allowed each of the new tenants free
rent from the date of taking possession to the 1st of
December, 1911. In one instance the time was three
days on a basis of $35.00 a month, or $3.50, and in the
other, seven days on a basis of $720.00 a year, or $13.80,
a total of $17.30. This loss properly belongs to plain-
tiff. The judgment is reversed and the cause remanded,
with directions to the court below to enter judgment for
plaintiff, as of date March 28th, 1912, in the sum of
$249.20, the amount claimed less free rent.

Judgment reversed.

*Decision en banc.*

Mr. Justice Hill and Mr. Justice Gabbert dissent.

Mr. Justice Hill dissenting:

Mr. Justice Hill dissenting:

I cannot agree with the conclusion that the question
of eviction is not involved. As I read the evidence it
fails to disclose conclusively that the plaintiff entered up-
on the premises for the purpose of making the repairs
at the invitation of the defendant, or that there ever was
a meeting of the minds of the parties upon any agreed
line to be followed. Neither is the evidence conclusive of
the fact that the defendant had abandoned the premises
at the time plaintiff took possession. To the contrary the
evidence of Mr. Wheelock discloses that at the time the
plaintiff took possession he had not surrendered the

keys; that his first knowledge of the plaintiff's possession was when he sent there for something, which he wanted in the offices. This evidence could be properly construed to mean that he still had some things left there. He testified that his sign had been removed from the door; that all of these acts were without his knowledge or consent. Under this state of facts I think the question of eviction was properly submitted to the jury. This position is sustained by the authorities.—*Hyman v. Jockey Club Co.*, 9 Colo. App. 299, 48 Pac. 671; *MacKellar v. Sigler*, 47 How. Prac. (N. Y.) 20; Jones on Landlord and Tenant (1906 Ed.), § 548.

Mr. Wheelock's first letter states if plaintiff should desire to have the offices occupied by tenants, satisfactory arrangements could probably be made. To my mind the evidence is not conclusive that satisfactory or any arrangements were ever made with the defendant concerning this subject, or the right to make permanent changes during the period of his lease. The fact that the defendant did not reply to the plaintiff's letter of October the 19th would not avoid the rule that surrender was effected by the actions of the landlord.—*Gray v. Kaufman Dairy & I. C. Co.*, 162 N. Y. 388, 56 Pac. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327.

By the terms of the defendant's first letter if the plaintiff desired possession prior to the termination of the defendant's lease or prior to his surrender of the property in turning over the keys, etc., it was incumbent upon its manager to have seen the defendant and secured an understanding concerning it, as well as the privilege to have made repairs during the remainder of the term. The plaintiff entered into possession about six weeks prior to the expiration of the defendant's term. During a part of this period it made permanent changes, improvements and repairs at a cost in excess of $500. This was not for the purpose of securing tenants for the unexpired

portion of the defendant's term, but was for the benefit of the plaintiff in order to secure new tenants, which it did, whose leases run for a term of years. During the time that these changes and improvements were being made the premises were unfit for ocupancy. To my mind all of these facts were properly submitted to the jury as evidence pertaining to the termination of the tenancy by the plaintiff.—*Carson v. Arvantes*, 10 Colo. App. 382, 50 Pac. 1080.

Mr. JUSTICE GABBERT concurs in the views herein expressed.