**Robert L. AUSTIN and Marquita Austin, Plaintiffs-Appellants,**

v.

**John LITVAK, M.D. and St. Anthony's Hospital, Defendants-Appellees.**

No. 82SA236.

Supreme Court of Colorado, En Banc.

May 7, 1984.

Rehearing Denied June 18, 1984.

Herbert A. Shatz, Denver, for plaintiffs-appellants.

Alan Epstein, Richard A. Hanneman, Hall & Evans, Denver, for defendant-appellee John Litvak, M.D.

Stuart L. Boulter, P.C., Denver, for defendant-appellee St. Anthony's Hosp.

Gene M. Hoffman, Hoffman & McDermott, Denver, for amicus curiae Colo. Trial Lawyers Assoc.

Pryor, Carney & Johnson, P.C., Thomas L. Roberts, Susan Teas Smith, Englewood, Hansen & Breit, P.C., John L. Breit, Susan Smith Fisher, Denver, for amicus curiae Colo. Defense Lawyers Assoc.

Lawrence M. Wood, Constance B. Wood, Denver, for amicus curiae Colo. Medical Soc.

NEIGHBORS, Justice.

The plaintiffs-appellants, Robert L. Austin and Marquita Austin, filed their complaint against the defendants-appellees, Dr. John Litvak and St. Anthony's Hospital, in the district court on June 4, 1980. The plaintiffs alleged that in 1963 the defendants negligently misdiagnosed Mr. Austin's medical condition as a parasaggital meningioma.[1] Each defendant filed a motion for summary judgment. The trial court granted Dr. Litvak's motion on the basis that the plaintiffs' claims were barred by the three-year statute of repose found in section 13–80–105, C.R.S.1973 (1983 Cum.Supp.). St. Anthony's summary judgment motion was granted for the same reason. Relying on *Moon v. Mercy Hospital*, 150 Colo. 430,

---

**1.** Mrs. Austin's action is for loss of consortium and is, therefore, derivative to Mr. Austin's claim.

373 P.2d 944 (1962), the trial court also ruled that the hospital was entitled to a summary judgment because it is "not licensed to practice medicine."

The plaintiffs appealed the trial court's rulings to the court of appeals. However, the appeal was transferred to this court pursuant to sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973 (1983 Cum.Supp.). We hold that the three-year statute of repose contained in section 13–80–105, C.R.S. 1973 (1983 Cum.Supp.), insofar as it applies to persons whose claims are premised on a negligent misdiagnosis claim, violates the equal protection guarantees of the Colorado Constitution and reverse the judgment of the trial court with regard to the plaintiffs' claims against Dr. Litvak. We affirm the dismissal of their claims against St. Anthony's Hospital.

## I.

We learn the following facts from the plaintiffs' complaint and their answers to Dr. Litvak's interrogatories.[2] Robert L. Austin was admitted to St. Anthony's Hospital in Denver, Colorado in September of 1963 for the treatment of kidney stones. During this hospitalization, Mr. Austin underwent numerous tests. The plaintiffs were informed by Dr. Litvak and other physicians that, based on the test results, Mr. Austin had a parasaggital meningioma, which is a form of brain tumor. Dr. Litvak was retained as the physician in charge of Mr. Austin's care and performed additional tests, one of which consisted of drilling an opening in Mr. Austin's skull, removing part of the skull, and placing a metal screen in his head. The screen remains intact. Dr. Litvak allegedly confirmed the diagnosis, informed Mr. Austin that the tumor was not operable without severe risk, and advised him not to undergo surgery. Mr. Austin also claims that while he was hospitalized at St. Anthony's, he was taken to Colorado General Hospital where additional tests were performed at Dr. Lit-

vak's direction; that these tests, unknown to Mr. Austin at the time, effectively established he did not have a brain tumor; and that Dr. Litvak was aware of this fact.

In May 1979, sixteen years after the alleged negligent misdiagnosis, Mr. Austin was involved in an automobile accident in Greeley, Colorado. As a result of a series of medical examinations and tests necessitated by the accident, Mr. Austin learned that he did not have a brain tumor and that, since this condition does not disappear by remission, he could never have suffered from such an illness. Mr. Austin and his wife filed this case eleven months later.

## II.

Within the last fifteen years the costs of medical services have increased drastically while their availability has decreased. During the mid-1970's, increased medical malpractice insurance rates raised concerns about higher medical costs to patients and the absence of practicing physicians in some rural areas. *See* Learner, *Restrictive Medical Malpractice Compensation Schemes: A Constitutional "Quid Pro Quo" Analysis To Safeguard Individual Liberties,* 18 Harv.J. on Legis. 143 (1981). Suggested causes of the "crisis" included (1) the increasing number of medical malpractice claims filed; (2) large and erratic damage awards; and (3) the "long-tail" problem which forced some insurance companies to impose artificially high present premiums to protect against increased future damage awards. *Id.* at 145. Although many commentators have argued that this "crisis" has been grossly exaggerated, *see* D. Louisell & H. Williams, *Medical Malpractice* § 20.07 n. 55 (Supp.1979), legislation designed to alleviate the crisis has been passed by the legislature in each state. *See* J. White & W. McKenna, *Constitutionality of Recent Malpractice Legislation,* 13 Forum 312 (1977). Representative provisions in malpractice legislation have included (1) the elimination of the *ad*

---

**2.** We express no opinion as to the truth of these facts which are alleged in the complaint and stated in response to discovery requests.

Whether the plaintiffs can prove the facts alleged remains to be determined at trial.

*damnum* clause from pleadings; (2) modification of the collateral source rule; (3) limitations on the kind and amount of damages recoverable; (4) mandatory insurance; (5) abolition of punitive damages; (6) establishment of screening panels or mandatory arbitration; and (7) changes in the statute of limitations applicable to medical malpractice claims. *Id.* at 312 n. 2.

The Colorado Legislature responded to the problem of increased premium rates for medical malpractice insurance and the refusal of all but a few insurance companies to write such coverage for Colorado physicians by shortening the statute of limitations for medical malpractice claims. Before reviewing this legislation, some brief background is helpful to place the issues raised by this appeal in perspective. Between 1925 and 1971, the Colorado statute of limitations provided that actions sounding in tort or contract to recover damages from certain members of the medical profession could not be maintained unless such action was "instituted within two years after such cause of action accrued." C.R.S. '53, 87–1–6. In 1963 and 1967, the legislature amended the statute by adding additional classes of persons to whom it pertained. C.R.S.1963, 87–1–6; Colo.Sess. Laws 1967, ch. 101. Before 1971, this two-year statute of limitations was judicially construed as beginning to run when the patient discovered, or in the exercise of reasonable diligence should have discovered, the doctor's negligence. *Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944). The adoption of the "discovery" rule was premised on the "manifest unfairness of foreclosing an injured person's cause of action before he has had even a reasonable opportunity to discover its existence." *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 378 A.2d 1138, 1139–40 (1977).

In 1971, the legislature amended C.R.S. 1963, 87–1–6, explicitly adopting the "discovery" rule. However, the legislature imposed a strict six-year limitation period [3] running from the date of the act or omission giving rise to the cause of action, except in cases involving unauthorized foreign objects. Colo.Sess.Laws 1971, ch. 232. In 1976, the statute was amended reducing the strict six-year limitation to five years. Colo.Sess.Laws 1976, ch. 90. In 1977, the General Assembly enacted the current statute which provides in pertinent part:

"13–80–105. *Actions barred in two years.* (1) No person shall be permitted to maintain an action, whether such action sounds in tort or contract, to recover damages from a licensed or certified hospital, health care facility, dispensary, or other institution for the treatment or care of the sick or injured due to alleged negligence or breach of contract in providing care or lack of informed consent or from any person licensed in this state or any other state to practice medicine, chiropractic, nursing, physical therapy, podiatry, veterinary medicine, dentistry, pharmacy, optometry, or other healing arts on account of the alleged negligence, breach of contract, or lack of informed consent of such person in the practice of the profession for which he is licensed or on account of his failure to possess or exercise that degree of skill which he actually or impliedly represented, promised, or agreed that he did possess and would exercise, unless such action is instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury. In no event may such action be instituted more than three years after the act or omission which gave rise thereto, subject to the following exceptions:

---

**3.** In this opinion the term "strict limitation period" means that a claim for medical malpractice is absolutely barred, regardless of the date on which the claimant discovers the physician's act or omission giving rise to the suit, if not filed within the prescribed statutory period. In this sense, the statute of limitations is more properly characterized as a statute of repose because the claim is barred even before the plaintiff becomes aware of its existence.

"(a) If the act or omission which gave rise to the cause of action was knowingly concealed by the person committing such act or omission, or, if such act or omission consisted of leaving an unauthorized foreign object in the body of the patient, then such action may be instituted within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered, the act or omission; . . ."

Section 13–80–105, C.R.S.1973 (1983 Cum. Supp.); Colo.Sess.Laws 1977, ch. 198. Since the "discovery" rule was thought to play a significant role in the medical malpractice crisis by creating the so-called "long-tail" of liability, this statute was designed to reduce malpractice premiums by eliminating the insurance companies' inability to predict future claims and losses.

In order to resolve the issues raised by this appeal, we must first interpret the statute to develop the necessary analytical framework. Insofar as the statute is involved in this case, section 13–80–105 establishes the following limitations, and exceptions to those limitations, governing the prosecution of a claim for medical malpractice: The claimant must file the action within two years after the injured person "discovered, or in the exercise of reasonable diligence and concern should have discovered, the injury." Section 13–80–105(1). In addition to this limitation period, the statute contains a repose provision which provides that no action may be filed more than three years after the act or omission which gave rise to the claim.‛ Section 13–80–105(1)(a) contains two exceptions to the three-year period of repose. One, the claim is not barred if the person who committed the act or omission knowingly conceals that

fact. Two, the claim is excepted from the period of repose if the physician left an unauthorized foreign object in the claimant's body. Under either exception, the medical malpractice action must be filed by the injured person within two years after the claimant discovers or should have discovered the act or omission.

### III.

The plaintiffs first argue that the trial court improperly granted summary judgment against them because the three-year statute of repose, section 13–80–105, does not apply to their claims. Alternatively, they contend that if the statute is applicable to this case, then they are entitled to invoke the "unauthorized foreign object" exception. In addition, the Colorado Trial Lawyers Association, amicus curiae on behalf of the plaintiffs, suggests that the plaintiffs' complaint should be construed as alleging a claim for "knowing concealment," the second exception to the strict three-year statute of repose.[4] We will address each argument separately.

### A.

In their complaint the plaintiffs allege that the negligent acts and omissions of the defendants occurred in September or October of 1963. The plaintiffs further state that they did not discover, and, in the exercise of reasonable diligence, could not have discovered that their claims existed until June 15, 1979. The plaintiffs' complaint was filed on June 4, 1980. For purposes of the summary judgment motions, the defendants have conceded that (1) the incorrect diagnosis was made and reported to the plaintiffs in 1963; (2) the plaintiffs discovered the improper diagnosis in 1979;

---

**4.** The amicus curiae has also urged that we construe the words "act or omission" found in section 13–80–105 in the context of misdiagnosis cases to be a continuing act or omission until discovered by the claimant. The amicus curiae candidly admits there is no Colorado case which supports this novel statutory interpretation. We have been unable to locate any authority elsewhere to support such a construction of the statute. Therefore, we reject the argument be- cause there was no continuation of the physician-patient relationship between Dr. Litvak and Mr. Austin after 1963, and decline to consider the issue further in this case. *See Clark v. Gulesian,* 429 F.2d 405 (1st Cir.1970); *Doyle v. Planned Parenthood,* 31 Wash.App. 126, 639 P.2d 240 (1982); and *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), which rejected the continuing tort theory in medical malpractice cases.

and (3) this action was filed within two years after the plaintiffs discovered the defendants' alleged act or omission.

 Under the two-year discovery provision in the present statutory scheme, a claim for medical malpractice accrues on the date the plaintiff discovers or should have discovered the injury. For purposes of the exceptions to the three-year statute of repose, the cause of action accrues when the claimant discovers or should have discovered the act or omission. *See Mastro v. Brodie*, 682 P.2d 1162 (Colo.S.Ct.1984), and *Owens*, 172 Colo. 525, 474 P.2d 603. The statute of limitations in effect on the date when the plaintiff's claim accrues governs the time within which an action must be commenced. *Mishek v. Stanton*, 200 Colo. 514, 616 P.2d 135 (1981); *Valenzuela v. Mercy Hospital*, 34 Colo.App. 5, 521 P.2d 1287 (1974). Because the plaintiffs' cause of action accrued in 1979, section 13–80–105 applies to their suit against the defendants and the three-year statute of repose bars their claims, unless the defendants' conduct comes within one of the statutory exceptions or the statute is constitutionally infirm. *Mishek*, 616 P.2d 135.

### B.

 We next address the issue of whether the metal screen in Mr. Austin's skull is an "unauthorized foreign object" within the meaning of the statutory exception. We conclude it is not, as a matter of law.

 The essence of the plaintiffs' complaint is negligent misdiagnosis, not the presence of an unauthorized foreign object left in Mr. Austin's body by Dr. Litvak. Indeed, the plaintiffs' complaint and answers to interrogatories establish that the metal screen was deliberately and necessarily placed in Mr. Austin's skull to replace bone that had been removed during the surgical diagnostic procedure. We conclude that an unauthorized foreign object is an object left inadvertently in the patient's body and which has no therapeutic or diagnostic purpose or effect. *See* Cal.Civ.Proc. Code § 340.5 (1982); Wis.Stat. § 893.55

(1983). Examples of such foreign objects include sponges (*Rosane*, 112 Colo. 363, 149 P.2d 372); surgical clamps (*Mudd v. Dorr*, 40 Colo.App. 74, 574 P.2d 97 (1977)); and injection needles (*Nixdorf v. Hicken*, 612 P.2d 348 (Utah 1980); *Landgraff v. Wagner*, 26 Ariz.App. 49, 546 P.2d 26 (1976)). A device which is intentionally placed in the body with the patient's knowledge and consent does not constitute an unauthorized foreign object for purposes of tolling the applicable statute of limitations. *Shannon v. Thornton*, 155 Ga.App. 670, 272 S.E.2d 535 (1980); *Cooper v. Edinbergh*, 75 A.D.2d 757, 427 N.Y.S.2d 810 (N.Y.App. 1980).

### C.

In paragraph 6 of their complaint, the plaintiffs allege:

"6. That upon information and belief, plaintiff [Mr. Austin] was, while a patient at said Hospital and under the care of and direction of Litvak, administered certain tests at Colorado General Hospital, and which test results unknown to plaintiff, but known to both defendants, effectively established that plaintiff did not have parasaggital meningioma."

It is suggested on behalf of the plaintiffs that these allegations are sufficient to plead knowing concealment as a reply to the statute of limitations defense and, therefore, the trial court erred when it granted summary judgment for the defendants. We reject this construction of the paragraph.

First, the gravamen of the plaintiffs' complaint is that the acts and omissions of the defendants constitute negligent misdiagnosis. Moreover, the plaintiffs' attorney did not raise this argument in support of his own pleading, either in the briefs filed in the trial court or in his opening brief filed in this court.

 Second, since the defendant raised the affirmative defense of the statute of limitations under section 13–80–105, it was incumbent upon the plaintiffs to come forward with facts sufficient to in-

voke the knowing concealment exception to the three-year statute of repose. They failed to do so; rather, they point only to the unsubstantiated allegations in paragraph 6 of their complaint. Under well-established principles of law governing disposition of summary judgment motions, reliance on unverified allegations in pleadings is wholly insufficient. *E.g., Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978); *O'Herron v. State Farm Mutual Automobile Insurance Co.*, 156 Colo. 164, 397 P.2d 227 (1964). Accordingly, the plaintiffs may not pursue their claims on the theory of knowing concealment. *Mishek*, 616 P.2d 135.

## IV.

The plaintiffs have raised a number of arguments in support of their position that the statute is unconstitutional. Indeed, substantial sections of the briefs filed by counsel for the parties and the amici curiae are directed to the due process and equal protection issues which have been presented. Because we elect to resolve this case on equal protection grounds, the due process issues will be saved for another day.[5]

We first focus our attention on the plaintiffs' argument that the provisions of section 13–80–105 violate their right to equal protection of the law.[6] Specifically, the plaintiffs maintain that the statute impermissibly discriminates between medical malpractice claimants by allowing persons who premise their "defense" to the three-year statute of repose on "foreign object" or "knowing concealment" theories to bring suit within two years after the plaintiff discovers, or in the exercise of reason-

able diligence and concern should have discovered, the act or omission, while requiring persons such as the plaintiffs who base their claim on negligent misdiagnosis to bring suit within two years after discovery of the injury or a maximum of three years from the date of the act or omission. Thus, the plaintiffs conclude that the statute unconstitutionally discriminates against negligently misdiagnosed plaintiffs by depriving them of the benefits of the discovery rule contained in the two statutory exceptions to the three-year repose provision.

The defendants suggest that our decision in *Mishek*, 616 P.2d 135, is dispositive of the plaintiffs' equal protection claim. We disagree. In *Mishek*, the claimant's equal protection argument was limited to her contention that " 'no reasonable basis exists for separating medical and healing professionals from other professionals and lay persons and granting them the special protection afforded by the six-year maximum statute of limitations' and therefore section 13–80–105, C.R.S.1973, violates constitutional provisions guaranteeing equal protection and the state constitutional prohibition against special legislation." *Id.* at 139. The argument was rejected because we declined to overrule our decision in *McCarty v. Goldstein*, 151 Colo. 154, 376 P.2d 691 (1962), where this court held that the two-year statute of limitations applicable to negligence claims against "person[s] licensed to practice medicine, chiropractic, osteopathy, chiropody, midwifery or dentistry," C.R.S. '53, 87–1–6, neither constituted special legislation nor violated equal protection principles.[7]

---

**5.** In *Mishek*, 616 P.2d at 139 n. 2, we expressly reserved the question of whether a statute of limitations shorter than six years comports with due process requirements.

**6.** U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

**7.** The courts of eighteen states have rejected equal protection challenges based on the claim that medical malpractice claimants may not be subjected to a shorter statute of limitations than tort claimants in general. *See DiAntonio v. Northampton-Accomak Memorial*, 628 F.2d 287,

291–92 (4th Cir.1980); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1172–75 (5th Cir.1979); *Reese v. Rankin Fite Memorial Hosp.*, 403 So.2d 158, 160–62 (Ala.1981); *Eastin v. Broomfield*, 116 Ariz. 576, 570 P.2d 744, 750–51 (1977); *Lacy v. Green*, 428 A.2d 1171, 1177–78 (Del.Super. 1981); *Pinillos v. Cedars of Lebanon Hosp. Corp.*, 403 So.2d 365, 367–68 (Fla.1981); *LePelley v. Grefenson*, 101 Idaho 422, 614 P.2d 962, 967–68 (1980); *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560, 570–71 (1979); *Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 404 N.E.2d 585, 600–01 (1980); *Rudolph v. Iowa*

The Fourteenth Amendment to the United States Constitution declares that no state shall deny a person equal protection of the law. It is well-established that a like guarantee exists within this state's due process clause. Colo. Const. art. II, § 25. *See Lujan v. Colorado State Board of Education,* 649 P.2d 1005 (Colo.1982); *Heninger v. Charnes,* 200 Colo. 194, 613 P.2d 884 (1980); *People v. Layton,* 200 Colo. 59, 612 P.2d 83 (1980). The standard to be applied in considering whether a legislative classification denies equal protection depends on the character of the state's interest.

In Colorado, we recognize three standards of review for purposes of equal protection analysis. *Lujan,* 649 P.2d at 1015. The first standard is labeled as "strict scrutiny" or "compelling governmental interest." Where a fundamental right is affected or a suspect classification is created, the state has the burden of establishing that the act is necessarily related to a compelling governmental interest. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16, *reh'g denied,* 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Lujan,* 649 P.2d 1005. This court has recognized that fundamental rights are essentially those rights which have been recognized as having a value essential to individual liberty in our society, *Lujan,* 649 P.2d at 1015 n. 7, and that a classification is considered "suspect" if it singles out religious, racial, or other discrete or insular minorities, such as those based on lineage or alienage. *Id.* at 1015 n. 8.

The second standard of review, "rational basis," applies where no funda-

mental right or suspect class is involved. In that situation, different classes of persons may be treated differently without violating equal protection guarantees if the statutory classification has some rational basis in fact and bears a rational relationship to legitimate governmental objectives. *People v. Velasquez,* 666 P.2d 567 (Colo. 1983); *Smith v. Charnes,* 649 P.2d 1089 (Colo.1982); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo.1982); *People v. McKnight,* 617 P.2d 1178 (Colo.1980).

The third standard, "intermediate review," has been invoked by this court when a statutory classification is based on gender. The burden is upon the state to show that the classification serves important governmental objectives and is substantially related to the achievement of those objectives. *See R.McG. v. J.W.,* 200 Colo. 345, 615 P.2d 666 (1980). *See also Caban v. Mohammed,* 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). We have acknowledged that the Supreme Court has utilized this intermediate standard of review for a variety of other classifications. *Lujan,* 649 P.2d at 1015 n. 9. For example, *see Foley v. Connelie,* 435 U.S. 291, 98 S.Ct. 1067, 55 L.Ed.2d 287 (1979) (alienage); *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977) (illegitimacy). *See also* J. Nowak, R. Rotunda & J. Young, *Handbook on Constitutional Law* (1978); Note, *Developments in the Law—Equal Protection,* 82 Harv.L.Rev. 1065 (1969).

In determining which of these three standards should be applied to the plaintiffs' equal protection argument, we first reject the strict scrutiny test. The Supreme Court has held that the right to recover damages in tort is not a fundamen-

---

*Methodist Medical Ctr.,* 293 N.W.2d 550, 557–59 (Iowa 1980); *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 631 P.2d 222, 233–36 (1981); *Everett v. Goldman,* 359 So.2d 1256, 1265–67 (La. 1978); *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, 76–80 (1978); *Paro v. Longwood Hosp.,* 373 Mass. 645, 369 N.E.2d 985, 987–89 (1977); *Linder v. Smith,* 629 P.2d 1187, 1192–93 (Mont.1981); *Prendergast v. Nelson,* 199

Neb. 97, 256 N.W.2d 657, 667–69 (1977); *Suchit v. Baxt,* 176 N.J.Super. 407, 423 A.2d 670, 676–78 (1980); *Comiskey v. Arlen,* 55 A.D.2d 304, 390 N.Y.S.2d 122, 129–30 (N.Y.App.1976); *Beatty v. Akron City Hosp.,* 67 Ohio St.2d 483, 424 N.E.2d 586, 591–95 (1981); *State ex rel. Strykowski v. Wilkie,* 81 Wis.2d 491, 261 N.W.2d 434, 441–44 (1978).

tal right. *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). State appellate courts which have considered the issue have reached the same conclusion. *E.g., American Bank & Trust Co. v. Community Hospital*, 33 Cal.3d 674, 190 Cal. Rptr. 371, 660 P.2d 829 (Cal.1983); *Jones v. State Board of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 404 N.E.2d 585 (1980); *Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980); *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 261 N.W.2d 434 (1978).

We decline to address the application of the intermediate standard in this case because the legislative classification fails under the rational basis test.

Our recent cases have made clear there are two separate and distinct prongs to the rational basis test. The first prong of the test has been formulated as requiring that "the classification is reasonable, not arbitrary," *Hurricane*, 651 P.2d at 1222, or that "the statutory classification has some rational basis in fact...." *Smith*, 649 P.2d at 1091. The second prong requires either that "the statutory classification ... bear[s] a rational relationship to legitimate state objectives," *Hurricane*, 651 P.2d at 1222, or that it be "reasonably related to a legitimate governmental interest." *Smith*, 649 P.2d at 1091. Regardless of the linguistic formulation of the test, we must conduct a "serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals." *American Bank & Trust Co.*, 660 P.2d at 837.

We are persuaded that the statutory classification prescribed by section 13–80–105 fails to meet the two-pronged test. The statutory exceptions which permit "foreign object" and "knowing concealment" claimants but not "negligently misdiagnosed" plaintiffs to avoid the three-year statute of repose and to invoke the discovery rule are without a reasonable basis in fact, thereby creating an arbitrary classification. Even though there may be a legitimate state interest in foreclosing the prosecution of stale or frivolous claims, the distinction upon which the classification is based was found to be arbitrary in *Owens*, 172 Colo. 525, 474 P.2d 603, where we noted that the treatment given a patient in a negligent misdiagnosis case is capable of being proved by objective facts and that the treatment administered is strong evidence of the diagnosis. We conclude that the two statutory exemptions substantially undermine the apparent legislative purpose in enacting the strict three-year statute of repose prescribed by section 13–80–105. Claims dependent upon knowing concealment to avoid the repose provision are far more likely to be frivolous or involve stale evidence than claims of negligent misdiagnosis for the reasons stated above. Moreover, the two exceptions created by the legislature also manifest a governmental interest in preserving medical malpractice claims where the claimant has sustained an injury but lacks any reasonable opportunity to discover the act or omission which caused the injury. The classification which results in the denial of the discovery rule to patients whose conditions are negligently misdiagnosed does not further this legitimate governmental interest and, therefore, lacks a rational relationship to that goal.

We have found only three jurisdictions that have considered whether the legislature's extension of the discovery rule to some medical malpractice claimants, while denying it to others, constitutes an impermissible discrimination between classes of claimants.[8] In declaring a similar two-year

---

8. When addressing the constitutionality of specific provisions of medical malpractice statutes courts are far from uniform in their analysis of the major issues. Some courts have upheld requirements that the plaintiff submit his or her claim to a malpractice review panel before filing an action, *see Everett v. Goldman*, 359 So.2d 1256 (La.1978); *Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57 (1978); *Paro v. Longwood Hosp.*, 373 Mass. 645, 369 N.E.2d 985 (1977); *Linder v. Smith*, 629 P.2d 1187 (Mont. 1981). Others have upheld the abolition of the

statute of limitations unconstitutional on equal protection grounds, the New Hampshire Supreme Court in *Carson* stated:

"RSA 507–C:4 (Supp.1979) is invalid insofar as it makes the discovery rule unavailable to all medical malpractice plaintiffs except those whose actions are based upon the discovery of a foreign object in the injured person's body. Under the discovery rule a cause of action does not accrue until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered both the fact of his injury and the cause thereof. *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 171, 371 A.2d 170, 174 (1977); *see United States v. Kubrick*, 444 U.S. 111, 118–25, 100 S.Ct. 352, 357–361, 62 L.Ed.2d 259 (1979). The rule is premised on 'the manifest unfairness of foreclosing an injured person's cause of action before he has had even a reasonable opportunity to discover its existence.' *Brown v. Mary Hitchcock Memorial Hospital*, 117 N.H. 739, 741–42, 378 A.2d 1138, 1139–40 (1977). Although the discovery rule was initially employed in this State in a 'foreign-object' case, *Shillady v. Elliot Community Hospital*, 114 N.H. 321, 320 A.2d 637 (1974), we made it clear in *Brown v. Mary Hitchcock Memorial Hospital* that the rule and the fundamental equitable considerations underlying it applied to medical malpractice cases generally. 117 N.H. at 741, 378 A.2d at 1139. As such, the legislature may not abolish the discovery rule with respect to any one class of medical malpractice plaintiffs. We therefore hold that in *all* medical malpractice cases in which the cause of action is not discovered and could not reasonably be discovered during the applicable limitation period, that period will not begin to run until the time the plaintiff discovers both his injury and its cause."

424 A.2d at 833 (emphasis in original). Later, in *Heath v. Sears, Roebuck & Co.*, 464 A.2d 288, 295 (N.H.1983), the New Hampshire Supreme Court summarized its holding in *Carson* as follows:

"In *Carson*, we ruled that the legislature's extension of the discovery rule to some medical injury plaintiffs, while denying its applicability to others, constituted an impermissible discrimination between classes of plaintiffs. We therefore held that RSA chapter 507–C (Supp. 1979) violated the equal protection provisions of our Constitution to the extent that it limited application of the rule to only a narrow class of medical-malpractice plaintiffs."

The Georgia Supreme Court reached a contrary result in *Allrid v. Emory University*, 249 Ga. 35, 285 S.E.2d 521 (1982). The Georgia court upheld the statutory classification which granted "foreign object" plaintiffs an exception to the Georgia two-year statute of limitations on the theory that the classification eliminated "the danger of belated, false or frivolous claims...." 285 S.E.2d at 525. The Mis-

collateral source rule, *see Eastin v. Broomfield,* 116 Ariz. 576, 570 P.2d 744 (1977); *Pinillos v. Cedars of Lebanon Hosp. Corp.,* 403 So.2d 365 (Fla.1981); *Rudolph v. Iowa Methodist Medical Ctr.,* 293 N.W.2d 550 (Iowa 1980); and monetary limitations on the fees of plaintiff's attorneys, *see Johnson v. St. Vincent Hosp., Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980). However, some courts have struck down as unconstitutional the requirement for submission of a claim to a medical review panel, *see Aldana v. Holub,* 381 So.2d 231 (Fla.1980); *Cardinal Glennon Memorial Hosp. v. Gaertner,* 583 S.W.2d 107 (Mo.1979); the imposition of a monetary limitation on recovery, *see Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980); *Arneson v. Olson,* 270 N.W.2d 125 (N.D.1978); *Simon v. St. Elizabeth Medical Ctr.,* 355 N.E.2d 903 (Ohio 1976); and

abolition of the collateral source rule, *see Doran v. Priddy,* 534 F.Supp. 30 (D.Kan.1981); *Graley v. Satayatham,* 343 N.E.2d 832 (Ohio Ct.Com. Pleas 1976). Courts have also found medical malpractice statutes unconstitutional because the alleged "crisis" no longer exists, *see American Bank & Trust Co. v. Community Hosp.,* 33 Cal.3d 674, 190 Cal.Rptr. 371, 660 P.2d 829 (1983); *Boucher v. Sayeed,* 459 A.2d 87, 89 (R.I. 1983); and because the statute impermissibly and irrationally discriminates between minors by allowing those minors under the age of ten years the benefits of the "discovery" rule while denying the same benefit to those minors over the age of ten, *see Schwan v. Riverside Methodist Hosp.,* 6 Ohio St.3d 300, 452 N.E.2d 1337 (1983).

souri Supreme Court, in upholding a similar classification in *Ross v. Kansas City General Hospital & Medical Center*, 608 S.W.2d 397 (Mo.1980), noted the unfairness to a claimant in whom a foreign object has been left if his suit is foreclosed before discovery of the foreign body. The court also indicated that there were fewer problems with stale evidence and certainty of proof in foreign object cases than in those cases involving negligent misdiagnosis.

We adopt the rationale set forth in *Carson*, 424 A.2d 825, and hold that the medical malpractice statute violates the equal protection provisions of our constitution to the extent that it denies application of the discovery rule to negligently misdiagnosed medical malpractice plaintiffs. The reasoning applied by the Georgia and Missouri courts is in direct conflict with prior decisions of this court in which we found the classification to be irrational, arbitrary, and suspect. In *Rosane*, 112 Colo. 363, 149 P.2d 372, and *Davis v. Bonebrake*, 135 Colo. 506, 313 P.2d 982 (1957), each physician's negligence consisted of leaving a foreign object in the patient's body. The plaintiffs relied on the theory of concealment to avoid the applicable statute of limitations. We held that each plaintiff's cause of action did not accrue until she discovered or by the exercise of reasonable diligence should have discovered the negligence. In *Owens*, 172 Colo. 525, 474 P.2d 603, we extended the discovery rule to cases involving negligent misdiagnosis in a case where the defendants-physicians allegedly misdiagnosed a brain tumor as malignant. The defendants there argued that the application of the discovery rule should be limited to cases involving foreign objects. We rejected the argument and stated:

> "Defendants have argued that the discovery rule is and should be applied only to foreign object cases. We believe the same rule should be applied regardless of the type of negligence involved.
>
> . . . .
>
> 'A few courts appear to have limited the discovery doctrine to cases in which the defendant has left a foreign object inside

the plaintiff in order to reduce the possibility that the plaintiff is asserting a completely fraudulent claim . . . [citations omitted]. We reject the distinction. In some cases, especially those involving an *allegedly negligent diagnosis*, a physical object is not involved and proof becomes more difficult. This does *not* necessarily mean that a fraudulent claim may be more easily asserted. As in the instant case, treatment generally follows diagnosis. *The treatment is an objective fact which may be proved or disproved by people other than the plaintiff. The fact that the treatment is the kind normally administered for the ailment the doctor allegedly improperly diagnosed is strong evidence of the diagnosis.'* (Emphasis added.)"

172 Colo. at 531–32, 474 P.2d at 606–07. Other courts have similarly rejected this distinction. As the Supreme Court of Oregon stated in *Frohs v. Greene*, 253 Or. 1, 452 P.2d 564, 565 (1969):

> "On a theoretical basis it is impossible to justify the applicability of the discovery rule to one kind of malpractice and not to another. The reason for the application of the discovery rule is the same in each instance. It is manifestly unrealistic and unfair to bar a negligently injured party's cause of action before he had had an opportunity to discover that it exists. This is true whether the malpractice consists of leaving a foreign object in the body or whether it consists of faulty diagnosis or treatment."

*See also Warrington v. Charles Pfizer & Co.*, 274 Cal.App.2d 564, 80 Cal.Rptr. 130 (1969); *Yoshizaki v. Hilo Hospital*, 50 Hawaii 150, 433 P.2d 220 (1967); *Lipsey v. Michael Reese Hospital*, 46 Ill.2d 32, 262 N.E.2d 450 (1970).

While these cases do not deal with the issue of the constitutionality of the statute of limitations, but rather with whether or not the "discovery" rule should be extended to cases other than those involving foreign objects, the rationale is equally persuasive. Moreover, in both "foreign ob-

ject" and "negligent misdiagnosis" cases the injured persons are wholly innocent and may, through no fault of their own, fail to discover their injury prior to the running of the statute of limitations. There is no difference between such claimants in degree of injury or culpability.

Whether the legislature could constitutionally enact a three-year statute of limitations or a statute of repose for all classes of medical malpractice claims is not an issue before us. What is before us is the narrow issue of whether the legislative scheme governing medical malpractice claims which grants an exception from the three-year statute of repose to foreign object and knowing concealment claimants, but not to negligently misdiagnosed claimants, is constitutional. We hold that it is not.[9]

Having ruled that the statutory scheme denies the plaintiffs' equal protection guarantees as applied to their claims, we must determine the appropriate remedy. We could either strike the two exceptions to the three-year statute of repose [10] or extend the discovery rule provided by the exceptions to the plaintiffs' claim of negligent misdiagnosis. In *Smith*, 649 P.2d at 1091–92 n. 8, we noted that where there is an equal protection violation, a court may "toss 'the equal protection coin' either way." (Quoting L. Tribe, *American Constitutional Law* § 15–2 at 85 n. 31

(Supp.1979).) Consistent with our earlier cases, the latter alternative is the more appropriate choice. *See, e.g., R.McG. v. J.W.*, 200 Colo. 345, 615 P.2d 666 (1980) (where statutory scheme allows natural mother to seek a judicial declaration of paternity in natural father in connection with child born to natural mother during her marriage to another, equal protection requires a claiming natural father to be accorded standing to pursue claim for judicial declaration of paternity in himself with respect to child born to natural mother during her marriage to another); *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977) (equal protection violated where conduct and intent proscribed by first degree assault statute and less severe offense of criminally negligent homicide not sufficiently distinguishable, and proper remedy is to sentence defendant to no greater penalty than applicable to criminally negligent homicide upon his conviction for first degree assault, if jury determines that defendant acted with good faith but unreasonable belief in self-defense in assaulting another). Accordingly, we hold that the plaintiffs must be included within the classes of persons excepted from application of the three-year statute of repose.

## V.

Finally, we address the propriety of the trial court's order granting St. Anthony's

---

**9.** The dissent correctly summarizes our conclusion that section 13–80–105 favors two classes of claimants by granting them access to the discovery rule while discriminating against a third class by depriving its members of the benefit of that rule. The dissent concedes, as it must, that "[i]f this is what the statute said, a strong argument could be made that it violated equal protection." At 55. This is precisely the point, because *that is what the statute provides*. We agree that all medical malpractice claimants have access to the two-year discovery rule, *initially*. However, such claims are barred three years after the date of the act or omission, notwithstanding the discovery rule, unless a claimant falls into one of the two exceptions. The two exceptions require *either* the presence of a foreign object *or* knowing concealment *and* that the action be brought within two years after the claimant *"discovered,* or in the exercise of reasonable diligence and concern, *should*

*have discovered* the act or omission." Section 13–80–105(1) (emphasis added). Accordingly, the discovery rule may be used by two classes of claimants and is denied to a third.

**10.** Striking the exceptions would be inconsistent with the legislature's intent to create such exceptions to the repose provision and might require that we also strike the three-year enactment as well, on the basis that the General Assembly would not have approved the statute of repose, absent the exceptions. This analysis could lead to the logical conclusion that the entire statutory scheme is unconstitutional and would leave no statute of limitations applicable to medical malpractice claims or the general six-year statute of limitations (section 13–80–110, C.R.S.1973 (1983 Cum.Supp.)), or the 1963 provisions (C.R. S.1963, 87–1–6). Therefore, we reject the first choice as being both unwise and unnecessary to resolve the narrow issues before us.

motion for summary judgment on the independent ground that a hospital cannot be held responsible for the negligence of the claimant's treating physician. We affirm the trial court's ruling.

■■■ We, as have the parties, characterized the plaintiffs' complaint as alleging claims based on a negligent misdiagnosis. The diagnosis and treatment of human illnesses and any surgery performed in connection with such diagnosis and treatment constitute the practice of medicine. *Moon*, 150 Colo. 430, 373 P.2d 944. When a doctor performs these functions in a hospital setting, the hospital and its employees "subserve him in his administrations to the patient. He has sole and final control in the matter of diagnosis, treatment, and surgery. Possessed of this authority, it follows that his actions as doctor are his responsibility." *Id.* 373 P.2d at 946. Our earlier cases hold that a hospital cannot be licensed to, and cannot practice medicine. *Moon*, 150 Colo. 430, 373 P.2d 944; *Rosane*, 112 Colo. 363, 149 P.2d 372.

The plaintiffs do not allege in their complaint that the hospital negligently extended staff privileges to a physician, *see Kitto v. Gilbert*, 39 Colo.App. 374, 570 P.2d 544 (1977), or that in some other way it is legally responsible for the alleged negligent misdiagnosis. *See Moon*, 150 Colo. 430, 373 P.2d 944. Accordingly, St. Anthony's motion for summary judgment on this ground was properly granted.[11]

The judgment dismissing the plaintiffs' complaint against Dr. John Litvak is reversed. The summary judgment entered against the plaintiffs on their claims against St. Anthony's Hospital is affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.

QUINN and KIRSHBAUM, JJ., concur.

DUBOFSKY, J., specially concurs.

---

**11.** The effect, if any, of the provisions contained in section 13–80–105, C.R.S.1973 (1983 Cum. Supp.), relating to hospitals upon our decision in *Moon v. Mercy Hosp.*, 150 Colo. 430, 373 P.2d

ROVIRA, J., concurs in part and dissents in part.

ERICKSON, C.J., and LOHR, J., join in the concurrence and dissent.

DUBOFSKY, Justice, specially concurring.

I concur in the result reached by the plurality opinion. Although I agree with the dissent that section 13–80–105, C.R.S. does not violate constitutional guarantees of equal protection, I believe that under Colo. Const. art. II, § 6, the General Assembly, absent compelling justification, may not employ a statute of repose to cut off a cause of action before plaintiffs have had reasonable time to assert that cause of action. *Cf. Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944) ("Under the facts pleaded it was impossible for the plaintiff to sue within the limitation and it is a recognized maxim that the law requires not impossibilities."); *Overland Construction Co., Inc. v. Sirmons*, 369 So.2d 572 (Fla. 1979) (interpreting language similar to Colo. Const. art. II, § 6 to forbid abrogation of common law rights absent an overpowering public necessity and declaring a statute of repose unconstitutional on that basis); *Terry v. New Mexico Highway Comm.*, 98 N.M. 119, 645 P.2d 1375 (1982) (A plaintiff whose right of action accrued shortly before expiration of a statute of repose is denied due process if he is denied a reasonable time within which to bring his suit.); *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2nd Cir.1952) (Frank, J., dissenting) (It is axiomatic that a statute of limitations does not begin to run against a cause of action before that cause of action exists.).

Undoubtedly, the General Assembly has the power to modify and even abrogate particular causes of action before those causes of action vest. *O'Quinn v. Walt Disney Productions*, 177 Colo. 190, 493 P.2d 344 (1972); *Goldberg v. Musim*, 162

---

944 (1962), is an issue not before us. The alleged negligence of St. Anthony's Hospital occurred in 1963, and the question has not been raised on appeal.

Colo. 461, 427 P.2d 698 (1967). In *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo. 1982), this court held that if a plaintiff does not discover his claim before the running of a statute of repose, that claim never vests and is therefore unprotected by Colo. Const. art. II, § 6. I believe that we erred in *Yarbro*, and that a cause of action vests upon the occurrence of the act or omission constituting breach of the legal duty owed the plaintiff. Once a cause of action vests it may not be time barred, without compelling justification, until the plaintiff has had a reasonable time to assert it.

I do not believe that there is a compelling justification for the three year statute of repose at issue here. I would therefore hold this provision unconstitutional. Colo. Const. art. II, § 6.

I concur in the result.

ROVIRA, Justice, concurring in part and dissenting in part.

I concur in the result reached in Parts II, III, and V of the plurality opinion. I dissent from Part IV of the plurality opinion which declares certain aspects of section 13–80–105 unconstitutional on equal protection grounds. In its view, "[t]he statutory exceptions which permit 'foreign object' and 'knowing concealment' claimants but not 'negligently misdiagnosed' plaintiffs ... to invoke the discovery rule are without a reasonable basis in fact, thereby creating an arbitrary classification." At 50. This theme is repeated throughout Part IV. Before reaching its decision, the plurality frames the issue as whether "the statute unconstitutionally discriminates against negligently misdiagnosed plaintiffs by depriving them of the benefits of the discovery rule." *Id.* at 48. After reaching its decision, the plurality explains that "[t]he classification which results in the denial of the discovery rule to ... negligently misdiagnosed [patients] does not further [a] legitimate governmental interest ...." *Id.* at 50.

These carefully phrased statements give a false impression of the constitutional issue in this case. The plurality suggests, in effect, that section 13–80–105 favors two classes of plaintiffs by granting them access to the discovery rule, while it discriminates against a third class of plaintiffs by "depriving" its members of the same access. If this is what the statute said, a strong argument could be made that it violated equal protection. The problem is that we are not dealing with a situation in which only some plaintiffs have the benefit of the discovery rule. That situation has already been addressed by this court and by the General Assembly. *See Owens v. Brochner*, 172 Colo. 525, 474 P.2d 603 (1970); *Davis v. Bonebrake*, 135 Colo. 506, 313 P.2d 982 (1957); *Rosane v. Senger*, 112 Colo. 363, 149 P.2d 372 (1944); An Act ... Concerning Limitation Of Actions Against Certain Licensed Health Care Institutions And Persons, Colo.Sess.Laws 1971, ch. 232, 87–1–6 at 952. As a result, every medical malpractice plaintiff now has access to the discovery rule as part of the two-year statute of limitations in section 13–80–105.

The issue in this case is not whether negligently misdiagnosed plaintiffs should have access to the discovery rule. Rather, it is whether a rational basis exists for the legislature's decision to toll the three-year statute of repose for only two classes of plaintiffs. The plurality cites only two cases which address the constitutional issue in a closely related context, and both of those cases reach a contrary result. In *Carson, Heath, Frohs, Warrington, Yoshizaki,* and *Lipsey* (cited in the plurality opinion, at 51–52), the courts were faced with the same problem confronting this court in *Owens:* whether to extend the discovery rule to previously excluded classes of plaintiffs. In *Allrid v. Emory University*, 249 Ga. 35, 285 S.E.2d 521 (1982), and *Ross v. Kansas City General Hospital & Medical Center*, 608 S.W.2d 397 (Mo.1980), the issue was whether an exception to the statute of repose for foreign object plaintiffs violated equal protection. The *Allrid* court decided that the classification was valid under the rational basis test:

"In *Dalbey v. Banks*, 245 Ga. 162, 163–4, 264 S.E.2d 4 (1980), we held that '[w]hen a physician places a foreign object in his patient's body during treatment, he has actual knowledge of its presence. His failure to remove it goes beyond ordinary negligence so as to be classified by the legislature as a continuing tort which tolls the statute of limitations until the object is discovered. The purpose of the legislature in making a distinction between the two types of medical malpractice was to allow the plaintiff's claim *which does not rest on professional diagnostic judgment or discretion* to survive until actual discovery of the wrongdoing. In such situations the danger of belated, false or frivolous claims is eliminated. The foreign object in the patient's body is directly traceable to the doctor's malfeasance.' Our holding in *Dalbey* clearly reflects a determination by this court that the classification created [in the statute] bears 'a fair and substantial relation to the object of the legislation.' [*Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971)]. We find plaintiff's equal protection claim to be without merit."

*Allrid*, 285 S.E.2d at 525 (emphasis added).

Likewise, the *Ross* court decided that the exception was not arbitrary and had a reasonable basis in fact:

"[T]here is no legislative history available setting forth the reasons why the General Assembly saw fit to [create an exception for foreign object plaintiffs]. One reason why the legislature acted may have been that the legislature considered it particularly unfair that a claimant in whom a foreign object has been left should be barred by the statute of limitations even before there was any discovery of the foreign object.... Or the legislature might have believed it was proper to measure from the time of discovery in the foreign object cases rather than from the time of the act of neglect, because there is less likely to be as great a problem with stale evidence when a foreign object is left in the body *than in the other types of malpractice cases.* There are likely to be greater certainties of proof in a foreign object case. A rational legislature could have based its decision on such considerations.

"The classification thus made between two classes of claimants with reference to when the statute of limitations commences to run cannot be said to be without any reasonable basis, nor is any distinction drawn between members within each class. There is no equal protection violation."

*Ross*, 608 S.W.2d at 399 (emphasis added).

I do not believe that the rationale which prompted this court and others to adopt the discovery rule should be applied to a case in which the constitutionality of various exceptions to the statute of repose is at stake. There are real differences between denying a class of plaintiffs access to the discovery rule and excluding that class from the list of exceptions to the statute of repose. In the view of the General Assembly, foreign object and knowing concealment plaintiffs are in a special category exposed to unfair risks that require the tolling of the statute of repose. The exclusion of negligently misdiagnosed and other medical malpractice plaintiffs reflects a legislative evaluation that these plaintiffs do not face the same risks. In fact, the legislature has concluded that the risks facing medical malpractice defendants, risks such as the bringing of fraudulent claims and the use of stale evidence, outweigh the occasional unfairness that excluded plaintiffs must endure. These types of decisions are within the prerogative of the General Assembly and should not be second-guessed by the courts, especially under the rubric of a rational basis analysis. I prefer the approach taken by the *Allrid* and *Ross* courts and would uphold the classification scheme in section 13–80–105. Accordingly, I dissent.

I am authorized to say that Chief Justice ERICKSON and Justice LOHR join in this concurrence and dissent.